IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HU HONUA BIOENERGY, LLC, a Delaware limited liability company, | Civil No. 16-00634 JMS-KJM |
| Plaintiff, | **MEMORANDUM IN SUPPORT** |
| vs. | |
| HAWAIIAN ELECTRIC INDUSTRIES, INC., a Hawai`i corporation; HAWAIIAN ELECTRIC COMPANY, INC., a Hawai`i corporation; HAWAII ELECTRIC LIGHT COMPANY, INC., a Hawai`i corporation; NEXTERA ENERGY, INC., a Florida corporation; HAMAKUA ENERGY PARTNERS, L.P., a Hawai`i limited partnership, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................... 1

II.  BACKGROUND .................................................................................... 5

III.  LEGAL STANDARD .......................................................................... 7

IV.  ARGUMENT ........................................................................................ 9

    A.  HU HONUA'S FEDERAL ANTITRUST CLAIMS AGAINST NEXTERA MUST BE DISMISSED ...................................... 9

        1.  NextEra Never "Controlled" HELCO or Any Other Defendant ........................................................................ 9

        2.  The Complaint Does Not Plausibly Allege NextEra's Participation in a Section 1 Conspiracy ................................... 14

        3.  Hu Honua's Monopolization Claims Against NextEra Fail as a Matter of Law ........................................................ 19

            a.  Conspiracy to Monopolize ............................................. 19

            b.  Monopolization and Attempted Monopolization .......... 21

        4.  Hu Honua Lacks Antitrust Standing ...................................... 23

            a.  Hu Honua Alleges a Contract Dispute .......................... 24

            b.  Hu Honua Has Not Alleged Harm to Competition ....... 28

    B.  PLAINTIFF'S STATE LAW CLAIMS AGAINST NEXTERA MUST BE DISMISSED ............................................... 34

        1.  Hu Honua's Hawai`i Antitrust Claims Fail .............................. 34

        2.  The Complaint Does Not Adequately Allege Tortious Interference ........................................................................ 35

V.  CONCLUSION .................................................................................... 37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*,
190 F.3d 1051 (9th Cir. 1999) ..........................................................................23

*Amerinet, Inc. v. Xerox Corp.*,
972 F.2d 1483 (8th Cir. 1992) ..........................................................................32

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................7, 8, 14

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)..........................................................................23, 24, 25

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990)..................................................................................23, 31

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................*passim*

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)..........................................................................................30

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)..................................................................................23, 32

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
2017 WL 58572 (D. Nev. Jan. 4, 2017)............................................................8

*City of Pittsburgh v. W. Penn Power Co.*,
147 F.3d 256 (3d Cir. 1998) ......................................................................30, 31

*Davis v. Four Seasons Hotel Ltd.*,
228 P.3d 303 (Haw. 2010) ...............................................................................35

*Duckett v. Williams*,
86 F. Supp. 3d 268 (S.D.N.Y. 2015) ...............................................................13

*G.U.E. Tech, LLC v. Panasonic Avionics Corp.*,
2015 WL 12696203 (C.D. Cal. Sept. 15, 2015) ..............................................23

*Gatt Commc'ns, Inc. v. PMC Assocs. LLC*,
711 F.3d 68 (2d Cir. 2013) ...............................................................24

*Gilbert v. Bank of Am.*,
2014 WL 12644028 (N.D. Cal. Sept. 23, 2014)................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)...........................................................................36

*Gold Refinery, LLC v. Aloha Island Gold, LLC*,
2012 WL 518396 (D. Haw. Feb. 15, 2012)..........................35, 36, 37

*Gorospe v. New Century Mortg. Corp.*,
2011 WL 3734230 (D. Haw. Aug. 23, 2011) .....................................34

*GreenCycle Paint, Inc. v. PaintCare, Inc.*,
2016 WL 1402845 (N.D. Cal. Apr. 8, 2016).....................................17

*Greensboro Lumber Co. v. Ga. Power Co.*,
643 F. Supp. 1345 (N.D. Ga. 1986)...........................................31, 33

*Hoilien v. OneWest Bank, FSB*,
2012 WL 1379318 (D. Haw. Apr. 20, 2012)...............................34, 35

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
602 F.3d 237 (3d Cir. 2010) ..............................................................30

*In the Matter of the Application of Hawaiian Elec. Co., Inc.*,
2013 WL 1089298 (Haw. P.U.C. Feb. 27, 2013) ..............................16

*In the Matter of the Application of Hawaiian Electric Co., Inc.*,
2016 WL 4367766 (Haw. P.U.C. Aug. 10, 2016) ...............................5

*In re Cal. Title Ins. Antitrust Litig.*,
2009 WL 3756686 (N.D. Cal. Nov. 6, 2009) ....................................18

*In re Capacitors Antitrust Litig.*,
106 F. Supp. 3d 1051 (N.D. Cal. 2015).......................................8, 19

*In re Fresh & Process Potatoes Antitrust Litig.*,
834 F. Supp. 2d 1141 (D. Idaho 2011) ..............................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
2014 WL 309192 (N.D. Cal. Jan. 21, 2014)......................................19

*In re Multidistrict Vehicle Air Pollution*,
   538 F.2d 231 (9th Cir. 1976) ..............................................................32

*In re Musical Instruments & Equip. Antitrust Litig.*,
   798 F.3d 1186 (9th Cir. 2015) ............................................................15

*Int'l Healthcare Mgmt. v. Haw. Coal. for Health*,
   332 F.3d 600 (9th Cir. 2003) ..............................................................34

*Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC*,
   665 F. Supp. 2d 1189 (D. Haw. 2009)..................................................28

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ......................................................*passim*

*Kirihara v. Bendix Corp.*,
   306 F. Supp. 72 (D. Haw. 1969)....................................................17, 18

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ..............................................................11

*Lorenzo v. Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009) ...............................................24

*Marin v. Landgraf*,
   2013 WL 356623 (D.N.J. Jan. 29, 2013)..............................................34

*McMahon v. Pier 39 Ltd. P'ship*,
   2001 WL 1463814 (N.D. Cal. Nov. 8, 2001) ......................................28

*Mercy-Peninsula Ambulance, Inc. v. Cty. of San Mateo*,
   792 F.2d 755 (9th Cir. 1986) .........................................................21, 22

*Meridian Mortg., Inc. v. First Hawaiian Bank*,
   122 P.3d 1133 (Haw. Ct. App. 2005) ..................................................36

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
   465 U.S. 752 (1984)............................................................................19

*Name.Space, Inc. v. ICANN*,
   795 F.3d 1124 (9th Cir. 2015) .......................................16, 17, 21, 22

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) ................................................................7

*Newport v. Dell, Inc.*,
2008 WL 4347311 (D. Ariz. Aug. 21, 2008) ....................................................13

*NicSand, Inc. v. 3M Co.*,
507 F.3d 442 (6th Cir. 2007) ...............................................................24

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
981 F.2d 429 (9th Cir. 1992) ...............................................................31

*Orion Pictures Distribution Corp. v. Syufy Enters.*,
829 F.2d 946 (9th Cir. 1987) ................................................27, 28, 33

*Paladin Assocs., Inc. v. Mont. Power Co.*,
328 F.3d 1145 (9th Cir. 2003) ...............................................................20

*Prime Healthcare Servs., Inc. v. Harris*,
2016 WL 6427924 (S.D. Cal. Oct. 31, 2016) ...................................................16

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
2012 WL 3778348 (S.D. Cal. Aug. 30, 2012) ...................................................20

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ................................................20, 24, 31

*Rundgren v. Wash. Mut. Bank, F.A.*,
2010 WL 4960513 (D. Haw. Nov. 30, 2010) ...................................................11

*Rutman Wine Co. v. E&J Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ...............................................................33

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ...............................................................13

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
113 F.3d 405 (3d Cir. 1997) ...................................................*passim*

*Smith v. United Airlines, Inc.*,
__ F. App'x __, 2016 WL 7406333 (9th Cir. Dec. 22, 2016) ...........................18

*Stearns v. Select Comfort Retail Corp.*,
2009 WL 1635931 (N.D. Cal. June 5, 2009).....................................................25

*Transphase Sys., Inc. v. S. Cal. Edison Co.*,
839 F. Supp. 711 (C.D. Cal. 1993) ...............................................................23

v

*United States v. Rashkovski*,
301 F.3d 1133 (9th Cir. 2002) .............................................................36

*Untied States v. Gemstar-TV Guide Int'l, Inc.*,
2003 WL 21799949 (D.D.C. July 11, 2003) ......................................10

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) .............................................................14

*Young Bros., Ltd. v. Int'l Longshore & Warehouse Union, Local 142*,
250 F. Supp. 2d 1244 (D. Haw. 2003) ................................................37

**Statutes**

16 U.S.C. § 824a-3 ...............................................................................31

16 U.S.C. § 2601 ..................................................................................30

Haw. Rev. Stat. § 269-7 ...................................................................29, 33

Haw. Rev. Stat. § 269-16 .................................................................29, 33

Haw. Rev. Stat. § 480-3 ........................................................................34

**Rules**

Fed. R. Civ. P. 8 .....................................................................................8

Fed. R. Civ. P. 12(b)(6) ........................................................................13

**Regulations**

18 C.F.R. § 292.303 .........................................................................31, 33

18 C.F.R. § 292.304 ..............................................................................31

18 C.F.R. § 292.306 ..............................................................................33

**Other Authorities**

American Bar Association, *Model Merger Agreement for the
Acquisition of a Public Company* (2011) ...........................................10

William Blumenthal, *The Scope of Permissible Coordination Between
Merging Entities Prior to Consummation*, 63 Antitrust L.J. 1
(1994)...............................................................................................10

## I.      INTRODUCTION

To sustain a claim against Defendant NextEra Energy, Inc. ("NextEra"), Plaintiff Hu Honua Bioenergy, LLC ("Hu Honua") must allege facts sufficient to show that NextEra engaged in anticompetitive behavior or other illegal conduct.  But stripped of its conclusory allegations, Hu Honua's Amended Complaint describes nothing more than rational, legal business behavior by NextEra consistent with the indisputably lawful terms of NextEra's merger agreement with Hawaiian Electric Industries, Inc. ("HEI").  Hu Honua consequently does not state a plausible claim; it does not even come close.

This case stems from Hu Honua's failure to timely build and complete an alternative energy plant to supply power to Defendant Hawaii Electric Light Company, Inc. ("HELCO"), as required by the Power Purchase Agreement ("PPA") that Hu Honua entered with HELCO in 2012.  FAC ¶¶ 38, 46, 58.[1]  It is undisputed that construction of Hu Honua's power plant was delayed for years— and that Hu Honua consequently missed completion deadlines contained in the PPA—after Hu Honua experienced labor union disputes, years-long litigation, adverse judgments, and financing problems (none of which had any alleged relation to NextEra or the other Defendants).  *Id.* ¶¶ 51, 58, 62.  The power plant is still not finished.  *Id.* ¶ 1.

---

[1]  NextEra accepts as true the well-pleaded allegations in the FAC only for purposes of this Motion.

When negotiations between HELCO and Hu Honua over PPA deadline extensions broke down, HELCO terminated the agreement. *Id.* ¶¶ 104, 110, 126. Hu Honua then sued, claiming the termination was improper. *Id.* ¶ 1.

As to NextEra, Hu Honua advances sweeping claims of unlawful monopolization, antitrust conspiracy, and state law torts. *Id.* ¶¶ 135-165, 189-201. NextEra was not a party to the PPA. So what did NextEra, a Florida-based energy company, allegedly do?

In conclusory terms, Hu Honua claims that NextEra exercised "total control" over the Hawaiian Electric entities during the pendency of NextEra's failed merger with HEI. *Id.* ¶ 56. From that fact-free foundation, Hu Honua declares that NextEra necessarily conspired with HEI, HELCO, and the other Defendants to engage in anticompetitive behavior and terminate the PPA. *Id.* ¶¶ 118-120.

What Hu Honua omits, however, is that the HEI-NextEra merger agreement expressly *prohibited* NextEra from exercising control over any Hawaiian Electric business while the merger was pending. NextEra had "[n]o control of [HEI's] business" and "nothing contained in this Agreement is intended to give [NextEra], directly or indirectly, the right to control or direct the operations

of [HEI] or any [HEI] Subsidiary." Merger Agreement § 5.01(c).[2] HEI—not

NextEra—retained "complete control and supervision over its and the [HEI]

Subsidiaries' respective operations" in accordance with the merger agreement. *Id*.

In alleging that NextEra exercised "total control" over the Hawaiian

Electric entities, Hu Honua does not provide any facts reflecting "who, what,

where, or when." Instead, it misleadingly quotes from a provision in the HEI-

NextEra merger agreement that prohibited HEI from making material changes to

material contracts while the merger was pending, absent NextEra's consent. FAC

¶ 56. That contract term is both lawful and routine in merger agreements. It

preserves the value of a seller's assets by giving the buyer an assurance that it will

receive advance notice of material-contract changes. Moreover, the HEI-NextEra

covenant explicitly prohibited NextEra from unreasonably withholding,

conditioning, or delaying its consent to any change the Hawaiian Electric entities

wished to make. Merger Agreement § 5.01(a). That means HEI retained control

of its own operations and made its own decisions. *Id*. § 5.01(c). The Complaint

contains no facts plausibly suggesting that NextEra acted contrary to these

provisions, nor could it.

In essence, NextEra is being sued because it did not stop HELCO

from terminating the PPA. This is not enough to state a claim for several reasons.

---

[2]  Additional information regarding the merger agreement and the grounds for
taking judicial notice of its terms are discussed below.

***First***, as noted, there are no *facts* plausibly suggesting that NextEra improperly influenced, let alone "totally controlled," the decision-making of any Hawaiian Electric Defendant.  Simply pointing to NextEra's compliance with a garden-variety material-change provision is not enough.  Hu Honua points to nothing else.

***Second***, the Complaint does not allege facts plausibly suggesting that NextEra reached a meeting of the minds with any entity to restrain trade or to monopolize any market, as is required under both federal and state antitrust laws. Indeed, the action attributed to NextEra—consenting to HELCO's decision to terminate the PPA—is consistent with rational, legal business behavior as dictated by the terms of its merger agreement.  Ninth Circuit authority is clear that much more is required to drag a defendant into court.

***Third***, the antitrust laws do not allow plaintiffs to convert contractual disputes like the one here into federal antitrust litigation.  Neither Hu Honua's failure to satisfy its obligations under the PPA nor its inability to secure relief from those terms represents a cognizable antitrust injury.  The fundamental dispute in this case—whether Hu Honua was entitled to extensions of the PPA deadlines it missed—can and should be resolved among these other parties, pursuant to other laws, and with reference to the terms of the PPA.

***Finally***, the Complaint does not adequately allege that NextEra induced or otherwise persuaded HELCO to breach the PPA, only that it consented

to *HELCO*'s request to terminate the agreement.  The Complaint does not state a claim for tortious interference with contractual relations.

At bottom, Hu Honua wildly alleges an antitrust conspiracy to explain away its current dilemma.  But try as it may, Hu Honua cannot spin its displeasure with the bargain it struck, or its inability to convince HELCO to modify those terms, into any sort of claim against NextEra.  Hu Honua's underlying dispute with the Hawaiian Electric Defendants is not NextEra's fight, and no amendments to the Complaint can plausibly suggest otherwise.  For these reasons, and as further explained below, NextEra asks that the Court dismiss all claims against NextEra with prejudice.

## II.    BACKGROUND

While Hu Honua struggled unsuccessfully to build its power plant, HEI and NextEra agreed to merge.  FAC ¶ 52.  HEI and NextEra announced their intentions on December 3, 2014, although the merger and its terms were subject to review and approval by the Hawai`i Public Utility Commission ("PUC").  *Id.* ¶ 57. The PUC ultimately rejected the HEI-NextEra merger on July 15, 2016.[3]  HEI and NextEra terminated their agreement three days later.[4]

---

[3]  *See In the Matter of the Application of Hawaiian Electric Co., Inc.*, 2016 WL 4367766, at *8 n.55 (Haw. P.U.C. Aug. 10, 2016) ("Docket No. 2015-0022 involved the proposed acquisition of HEI, parent company of the [Hawaiian Electric Company ("HECO")] Companies, by NextEra Energy, Inc.  On July 15,

(continued...)

Like almost every merger agreement, the HEI-NextEra deal prevented HEI from making material changes to its material contracts while the merger was pending, absent NextEra's consent. *Id*. ¶ 56. Thus, when in "early January 2016, HELCO submitted a request to NextEra for its consent to terminate Hu Honua's PPA[,] NextEra approved the termination." *Id*. ¶ 118. Similarly, when "in February 2016, HELCO again submitted a request to NextEra for its consent to terminate Hu Honua's PPA," "NextEra approved the termination." *Id*. ¶ 119.

On the basis of these approvals, Hu Honua contends that NextEra "joine[d] and participat[ed] in a conspiracy to restrain trade in and monopolize the electrical power generation market on the Island of Hawai`i." *Id*. ¶ 120. The Complaint asserts four claims against NextEra:

1) violation of Section 2 of the Sherman Act for conspiring to monopolize (First Cause of Action, *id*. ¶¶ 135-155);

2) violation of Section 1 of the Sherman Act for conspiring to restrain trade (Second Cause of Action, *id*. ¶¶ 156-165);

3) tortious interference with a contract (Seventh Cause of Action, *id*. ¶¶ 189-194); and

---

(...continued)
2016, the commission issued Order No. 33795, which dismissed the application in Docket No. 2015-0022 without prejudice.").

[4] *Available at* http://www.nexteraenergy.com/news/contents/2016/071816.shtml.

4)      state-law antitrust violations (Eighth Cause of Action, *id*. ¶¶

195-201).

Hu Honua seeks treble damages totaling more than $1.5 billion and a

permanent injunction prohibiting HELCO and any related entities "from taking

action in any manner inconsistent with the PPA." *Id*. ¶ 207; *see id*. at 94-95

(prayer for relief).

## III.   LEGAL STANDARD

A complaint must state a claim to relief that is plausible on its face.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial

plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  If "the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not shown—that the pleader is entitled to relief,"

and it must be dismissed.  *Id*. at 679 (quotation and alteration omitted).  For this

reason, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements," fail at the outset.  *Id*. at 678.

Assessing plausibility is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id*. at 679.

In so doing, the Court must ensure that each element of a claim is plausible and

supported by sufficient factual allegations.  *Id*. at 680-84; *Native Vill. of Kivalina v.*

*ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) ("the complaint must allege sufficient facts plausibly establishing each element of the" relevant claim); *CG Tech. Dev., LLC v. FanDuel, Inc.*, 2017 WL 58572, at *3 (D. Nev. Jan. 4, 2017) (same).  It must also ensure that the Complaint contains plausible allegations "that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it."  *In re Capacitors Antitrust Litig.*, 106 F. Supp. 3d 1051, 1066-67 (N.D. Cal. 2015) (quotation omitted; dismissing certain defendants).

Sufficient factual allegations are necessary at the pleading stage because antitrust litigation is unusually costly and burdensome.  "It is no answer to say" that deficient claims can be weeded out in the discovery process because "it is only by taking care to require allegations that reach the level suggesting [antitrust violations] that we can hope to avoid the potentially enormous expense of discovery" in meritless cases.  *Twombly*, 550 U.S. at 558-59; *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008) ("discovery in antitrust cases frequently causes substantial expenditures and gives the plaintiff the opportunity to extort large settlements even where he does not have much of a case").  Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

## IV.   ARGUMENT

### A.   HU HONUA'S FEDERAL ANTITRUST CLAIMS AGAINST NEXTERA MUST BE DISMISSED

#### 1.   NextEra Never "Controlled" HELCO or Any Other Defendant

Unable to advance facts describing any wrongdoing by NextEra, Hu Honua repeatedly incants the unfounded conclusion that NextEra exercised "total control over HECO's/HELCO's conduct" and therefore participated in the purportedly anticompetitive actions of those Defendants.  FAC ¶ 56; *see id*. ¶¶ 63, 132-33, 137.  These conclusory allegations are no substitute for facts plausibly suggesting that NextEra engaged in anticompetitive behavior, but fail in any event.

The Complaint does not contend that NextEra's merger agreement with HEI—the sole basis for Hu Honua's "control" allegations (*id*. ¶ 56)—was unlawful in any way.  Nor could it.  The merger agreement was entered into more than one year before NextEra purportedly joined any conspiracy.  *Id*. ¶¶ 52, 120 (NextEra purportedly joined a conspiracy in January 2016; merger agreement executed in December 2014).

What is more, material-change provisions like the one included in the HEI-NextEra merger agreement—which prevented HEI from making material changes to its material contracts during the pendency of the merger, absent NextEra's consent—"have evolved over generations to protect the legitimate interests of the parties to the transactions.  They are ancillary, reasonable, and

lawful.  Any judgment holding them in violation of [the antitrust laws] would sharply disrupt the world of corporate law."  William Blumenthal, *The Scope of Permissible Coordination Between Merging Entities Prior to Consummation*, 63 Antitrust L.J. 1, 55 & n.245 (1994) (former General Counsel of Federal Trade Commission); *see also Untied States v. Gemstar-TV Guide Int'l, Inc*., 2003 WL 21799949, at *3 (D.D.C. July 11, 2003) (permitting material change limitations to protect against "change in the value of to-be-acquired assets").

Material-change provisions are so routine that they are included in the American Bar Association's Model Merger Agreement, which recommends language similar to that found in the HEI-NextEra agreement:

| ABA Model Merger Agreement | HEI-NextEra Agreement |
|---|---|
| "During the Pre-Closing Period (***except with the prior written Consent of Parent***), ***the Company shall not***, and shall not permit any of its Subsidiaries to . . . ***amend, modify, change, or terminate any Material Contract*** . . . other than in the ordinary course of business." <br><br> ABA, *Model Merger Agreement for the Acquisition of a Public Company* 127, 137 (2011) (emphasis added; relevant excerpts available in the Appendix to this Motion). | "***Except*** for matters set forth . . . or ***with the prior written consent of Parent*** (which consent shall not be unreasonably withheld, conditioned or delayed) . . . ***the Company shall not***, and shall not permit any Company Subsidiary to . . . other than in the ordinary course of business consistent with past practice . . . ***enter into, terminate or amend in any material respect any material contract***." <br><br> Merger Agreement § 5.01(a)(xii) (emphasis added).[5] |

[5]  A*vailable at* http://cca.hawaii.gov/dca/files/2015/01/2015-0022-Application-for-Approval-of-the-Proposed-Change-of-Control-and-Related-Matters-HEI-NextEra-Energy-Merger-00069147.pdf (Exhibit 3).  The relevant merger agreement

(continued...)

The HEI-NextEra covenant, however, is even more restrictive than the ABA's recommended version.  For example, if HEI asked NextEra to consent to material changes in material contracts, NextEra's consent could "not be unreasonably withheld, conditioned or delayed."  Merger Agreement § 5.01(a).  Nor could NextEra interfere with any non-material change or any HEI action "in the ordinary course of business consistent with past practice."  *Id.* § 5.01(a)(xii).  Hu Honua purports to quote the HEI-NextEra merger agreement, but ignores this language completely.

Hu Honua similarly omits Section 5.01(c), which directly contradicts and undermines Hu Honua's conclusory allegations of unlawful control:  NextEra will have "No Control of [HEI's] Business" and "nothing contained in this Agreement is intended to give [NextEra], directly or indirectly, the right to control or direct the operations of [HEI] or any [HEI] Subsidiary prior" to regulatory approval and consummation of the merger:

---

(...continued)
sections are also excerpted in the Appendix to this Motion.
The Court may take judicial notice of documents upon which the Complaint relies, especially when the authenticity of the documents is not contested and the documents are publicly available on government websites.  *Twombly*, 550 U.S. at 568 n.13; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Rundgren v. Wash. Mut. Bank, F.A.*, 2010 WL 4960513, at *2 n.2 (D. Haw. Nov. 30, 2010) (Seabright, J.) ("The court finds that judicial notice of the P&A Agreement is appropriate—it is readily available on the FDIC's website and judicial notice may be taken of documents available on government websites." (quotation omitted)).

| Hu Honua's Conclusory Allegations | Actual Terms of Merger Agreement |
|---|---|
| "[A]lthough NextEra's merger with HECO had not yet been approved, ***it exercised total control*** over HECO's/HELCO's conduct of their important business actions and material agreements."  FAC ¶ 56. | |
| NextEra had "***extensive control*** over HECO's operations effective December 3, 2014."  FAC ¶ 63. | "(c) ***No Control of [HEI's] Business***." |
| "***NextEra was in control of all facets of the material business decisions*** of HECO, prior to the Commission's decisions on the pending applications." FAC ¶ 132. | "***[N]othing contained in this Agreement is intended to give [NextEra], directly or indirectly, the right to control*** or direct the operations of [HEI] or any [HEI] Subsidiary." |
| "***With NextEra in control***, HECO began terminating and materially changing its business plans, including those related to the Hu Honua Facility." FAC ¶ 133. | HEI retained "***complete control*** and supervision over its and the [HEI] Subsidiaries' respective operations." Merger Agreement § 5.01(c) (emphasis added). |
| "HELCO's, along with HECO's and HEI's, conduct and practices . . . [were] ***controlled by NextEra***."  FAC ¶ 137 (emphasis added throughout). | |

The Complaint offers no facts suggesting that NextEra or the

Hawaiian Electric Defendants deviated from these "no control" requirements.  Hu

Honua simply ignores them and declares that NextEra "exercised total control"

over the Hawaiian Electric entities and thereby likely participated in unlawful

behavior.  FAC ¶¶ 56, 63, 132-33, 137 ("Given NextEra's extensive control over

HECO's and HELCO's operations effective December 3, 2014," Hu Honua "believes" that NextEra "participated in" offending conduct).

Considered in light of the actual merger-agreement language, such allegations are improper and inadequate.  *See, e.g.*, *Duckett v. Williams*, 86 F. Supp. 3d 268, 273 & n.4 (S.D.N.Y. 2015) (dismissing claim; condemning selective use of contract language as "patently absurd and contrary to [the contract's] plain language"); *Newport v. Dell, Inc*., 2008 WL 4347311, at *10 (D. Ariz. Aug. 21, 2008) (courts review full contracts "to prevent plaintiffs from defeating a Rule 12(b)(6) motion by deliberately omitting references to" relevant information).

Unsupported "allegations of direction and control are no more than legal conclusions couched as fact" and do not constitute sufficient allegations "under *Twombly* and *Iqbal* to state a claim."  *Gilbert v. Bank of Am*., 2014 WL 12644028, at *3 (N.D. Cal. Sept. 23, 2014) (dismissing relevant defendants); *see In re Fresh & Process Potatoes Antitrust Litig*., 834 F. Supp. 2d 1141, 1166 (D. Idaho 2011) (dismissing defendant that purportedly "participated in and benefited from the conspiracy" through control of other defendants because "control allegations are too conclusory, and the other allegations do not specifically implicate" the defendant).

Consequently, the Court must "discount [these] conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129

(9th Cir. 2013) (quotation and alteration omitted); *see Iqbal*, 556 U.S. at 678

(same).[6]  Without them, Hu Honua's antitrust claims evaporate.

The only remaining allegations—that NextEra ultimately needed to

approve material changes to the PPA (FAC ¶¶ 75, 85, 104, 118-119)—simply

restate the lawful terms of the merger agreement, nothing more.  This kind of

conclusory, unsupported pleading does not plausibly allege that NextEra controlled

any other Defendant or thereby participated in anticompetitive acts.

### 2.    The Complaint Does Not Plausibly Allege NextEra's Participation in a Section 1 Conspiracy

As with every Section 1 claim, Hu Honua must allege a "contract,

combination, or conspiracy" for an unlawful objective.  *William O. Gilley Enters.,*

*Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 663 (9th Cir. 2009).  To do so, the

Complaint must allege "enough factual matter (taken as true) to suggest that an

agreement was made."  *Twombly*, 550 U.S. at 556.  A "conclusory allegation of

agreement at some unidentified point," as well as facts that create only a

"suspicion" or "possibility" of unlawful agreement, will not do.  *Id*. at 554-55, 557

(citations omitted).

---

[6]  Even allegations based on "information and belief" require foundational support
in the form of well-pleaded facts.  *Twombly*, 550 U.S. at 551, 556-57, 564-66
("information and belief" insufficient to state a plausible antitrust claim when
supporting facts lacking).  As noted, Hu Honua offers no facts plausibly suggesting
control by NextEra.

Put differently, Hu Honua cannot survive a motion to dismiss by alleging behavior that "could just as easily suggest rational, legal business behavior by the defendants as [it] could suggest an illegal conspiracy." *Kendall*, 518 F.3d at 1049; *see In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1189 (9th Cir. 2015). An "antitrust complaint must cross the threshold not only between 'conclusory and factual' but also between 'the factually neutral and the factually suggestive.'" *Kendall*, 518 F.3d at 1049 (quoting *Twombly*, 550 U.S. at 557 n.5).

The Complaint in this case alleges that Defendants unlawfully conspired to "restrict[] competition in the market for wholesale firm power generation and rais[e] the price of power." FAC ¶¶ 158-159. NextEra purportedly joined and began participating in this conspiracy in January 2016, when it consented to HELCO's termination of the PPA. *Id*. ¶ 120. But that event does not plausibly suggest that NextEra agreed to join a conspiracy or otherwise engaged in unlawful behavior. NextEra's purported actions represented legal, rational business behavior undertaken pursuant to the lawful terms of a long-standing contract.

To begin, Hu Honua concedes that its own labor disputes and litigation with non-Defendants, "together with corresponding financing interruptions, caused an extended loss of time and delayed the completion of construction of the Hu Honua Facility," rendering it impossible for Hu Honua to satisfy the terms of the PPA. *Id*. ¶¶ 51, 58. It sought relief by asking HELCO to

modify the PPA, but those negotiations purportedly broke down because Hu Honua did not offer sufficient price concessions. *Id.* ¶¶ 61-62, 71.

That HELCO ultimately refused to amend a contract that Hu Honua had already failed to live up to, and thereby chose to enforce *agreed-upon terms*, is just as consistent with "rational, legal business behavior" as with any other motivation. *Kendall*, 518 F.3d at 1049.[7] Indeed, the Ninth Circuit has explained that "[w]e cannot infer an illegal agreement" when defendants' "decisions favor the status quo rather than [plaintiff's] untested alternative." *Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1130-31 (9th Cir. 2015) ("perfectly logical" to follow course approved by government); *see Prime Healthcare Servs., Inc. v. Harris*, 2016 WL 6427924, at *10 (S.D. Cal. Oct. 31, 2016) (dismissing claim when allegations "doctrinally consistent with lawful conduct" (quotation omitted)).

---

[7] The State of Hawai`i Consumer Advocate, who represents consumer interests before the PUC, publicly opposed extensions to Hu Honua's PPA. He explained that Hu Honua had displayed an "inability to properly manage" its project, failed to obtain timely project financing or pay "monies owed under various contracts and subcontracts," and breached a $30 million adverse judgment. It further noted that the PPA was "likely to result in a bill increase for Hawaii Electric Light customers." Division of Consumer Advocacy's Comments Pursuant to Order No. 33516 at 1-2, 4, 7 (Feb. 26, 2016), *available at* http://cca.hawaii.gov/dca/files/2016/02/2012-0212-CA-Comments.pdf.
The PUC itself has explained that "termination for failure to meet significant milestones is an important PPA provision." *In the Matter of the Application of Hawaiian Elec. Co., Inc.*, 2013 WL 1089298 (Haw. P.U.C. Feb. 27, 2013) (noting further that "significant delays for the in-service date" must, at a minimum, result in "a reduction in energy pricing").

The same can be said of NextEra's consent to HELCO's termination of the PPA.  The terms of the HEI-NextEra merger agreement prohibited NextEra from "unreasonably withholding, conditioning, or delaying" its consent to material changes in material contracts.  If HELCO wanted to make the "perfectly logical" decision to "favor the status quo" rather than an "untested alternative" (*Name.Space*, 795 F.3d at 1130-31), NextEra could not unreasonably withhold its consent.  As such, when "HELCO submitted a request to NextEra for its consent to terminate" the PPA in early 2016, NextEra approved.  FAC ¶ 118; *see id.* ¶ 119.

Put simply, the Complaint "do[es] not tend to exclude the innocent, competing explanation[]" that NextEra's behavior was legal, rational, and called for by the lawful terms of the merger agreement, thus undermining any suggestion that NextEra joined a conspiracy.  *GreenCycle Paint, Inc. v. PaintCare, Inc*., 2016 WL 1402845, at *6 (N.D. Cal. Apr. 8, 2016) (dismissing claim; "where a plaintiff's allegations are stuck in 'neutral territory,' i.e., they do not tend to exclude the innocent explanation, such allegations fall short of what *Iqbal* and *Twombly* require") (collecting cases); *see Twombly*, 550 U.S. at 567 (claims must not have "obvious alternative explanation[s]"); *Kendall*, 518 F.3d at 1049 (same).

Similar allegations were deemed insufficient by this Court in *Kirihara v. Bendix Corp*., 306 F. Supp. 72 (D. Haw. 1969).  In that case, the plaintiff's distribution contract with one of two merging companies was terminated.  The plaintiff alleged that defendants' merger agreement and related dealings constituted

an unlawful conspiracy to lessen competition and exclude plaintiff from the

relevant market.  *Id*. at 75.  Even under the liberal pleading standards that applied

before *Twombly*, this Court dismissed the complaint because there was "nothing in

plaintiff's factual allegations which indicate[d] in the slightest that [defendants]

combined for the primary purpose of excluding [plaintiff] from any market—

Hawaiian or otherwise."  *Id*. at 78.  The "naked charge" that defendants had

conspired in the context of their lawful merger, and that the termination of

plaintiffs' distribution contract was the product of that conspiracy, did "not state a

Sherman § 1 violation."  *Id*. at 79.

       The same is true here.  There are no factual allegations plausibly

suggesting that NextEra's unsuccessful merger was "in the slightest" directed at

unlawful restraints of trade.  *Id.; see also Smith v. United Airlines, Inc*., __ F.

App'x __, 2016 WL 7406333, at *2 (9th Cir. Dec. 22, 2016) (allegations of

agreement insufficient when supported by a "paucity of factual detail" and

"information and belief").  That NextEra and HELCO purportedly had similar

"business interests" does not indicate otherwise (FAC ¶ 63)—"shared economic

interests" are insufficient to suggest conspiracy.  *In re Cal. Title Ins. Antitrust

Litig*., 2009 WL 3756686, at *4 (N.D. Cal. Nov. 6, 2009) (collecting cases).[8]

---

[8]  Allegations regarding HELCO's proposed acquisition of a HEP power plant,
HECO's termination of PPAs with three intermittent power generators on the
Island of Oahu, and HECO's brief plans to use liquefied natural gas suffer from the

(continued...)

In the end, a plausible conspiracy claim requires more than allegations that two defendants somehow are connected.  The Complaint must instead advance factual allegations "pointing toward a meeting of the minds" to achieve an identified and unlawful objective.  *Twombly*, 550 U.S. at 557; *see Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (facts must indicate "a conscious commitment to a common scheme designed to achieve an unlawful objective").  There are no such allegations in this case and, as a result, Hu Honua's Section 1 claim against NextEra must be dismissed.  *In re Capacitors*, 106 F. Supp. 3d at 1066-67 (dismissing claims against certain defendants); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 309192, at *13 (N.D. Cal. Jan. 21, 2014) (same).

### 3. Hu Honua's Monopolization Claims Against NextEra Fail as a Matter of Law

#### a. Conspiracy to Monopolize

The Complaint contends that NextEra violated Section 2 of the Sherman Act by conspiring "with HELCO in furtherance of HELCO's unlawful monopolizing and attempting to monopolize the relevant market."  FAC ¶ 138.  To

---

(...continued)
same defects.  The Complaint does not allege that NextEra had any connection to the proposed HEP acquisition or the Oahu PPAs.  *See* FAC ¶¶ 90-99, 127-130. And Hu Honua does not explain how modifying the manner in which existing power plants generate energy restrains competition.  In any event, because the liquefied natural gas modifications were conditioned on approval of the HEI-NextEra merger (*id.* ¶ 132), and because the PUC rejected that merger, and HEI and NextEra subsequently terminated their merger agreement, the allegations are a nullity.

state a claim for conspiracy to monopolize, Hu Honua must allege "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

With respect to the third element, each purported conspirator must share the specific intent to monopolize. *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 n.8 (9th Cir. 1995). It is not enough that the parties agreed to some other end. *Id.* (plaintiff "must show that the independent dealers had the specific intent to conspire to monopolize; it is not enough to show that the dealers merely agreed to go along with [another defendant's] pricing").

As discussed above, Hu Honua advances facts indicating only that NextEra agreed to merge with HEI and then approved HELCO's termination of the PPA. There are no facts indicating that NextEra agreed to anything else, much less that it specifically intended to create a single dominant entity in the wholesale firm baseload power generation market on the Island of Hawai`i. Rather, NextEra's conduct was consistent with its own legal, rational, and legitimate business aims by adhering to the terms of a lawful merger agreement, which negates any inference of conspiracy or specific intent to monopolize. *Kendall*, 518 F.3d at 1049; *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 2012 WL 3778348, at *11-12 (S.D. Cal. Aug. 30, 2012) (dismissing claim; allegations related principally to one

defendant and did not reasonably support an inference that second defendant agreed or had the specific intent to monopolize).

      **b.**    <u>Monopolization and Attempted Monopolization</u>

Hu Honua also contends that "HELCO's, along with HECO's and HEI's, conduct and practices . . . as controlled by NextEra, were undertaken for the purpose and have had the effect of monopolizing the market for firm generation of electricity on the Island of Hawai`i." FAC ¶ 137. To the extent this allegation suggests NextEra monopolized or attempted to monopolize the wholesale firm baseload power generation market on the Island of Hawai`i, it must be dismissed.

"The gravamen of a section 2 claim is the deliberate use of market power by a competitor to control price or exclude competition." *Name.Space*, 795 F.3d at 1131-32 (quoting *Mercy-Peninsula Ambulance, Inc. v. Cty. of San Mateo*, 792 F.2d 755, 759 (9th Cir. 1986)). If a defendant does not compete in the relevant market, it cannot be liable for monopolizing or attempting to monopolize that market. *Id*.

In *Name.Space*, for example, plaintiffs argued that the Internet Corporation for Assigned Names and Numbers ("ICANN") should face monopolization claims even though it did not personally compete in any relevant market. Plaintiffs contended that ICANN was a "participant" in various markets and had "ultimate control" over an "essential aspect" therein. *Id*. The Court rejected the argument and dismissed the monopolization claims. It explained that

control and influence in a market "does not mean that [the defendant] competes in the market," and absent actual competition, no monopolization claim is appropriate—"market power under Section 2 of the Sherman Act" does not "encompass[] influence by a non-competitor." *Id.* (quotation omitted); *see Mercy-Peninsula*, 791 F.2d at 759 (defendant that performed no healthcare services could not be charged with excluding competition in healthcare services market).

Here, Hu Honua concedes that NextEra is a Florida corporation with its principal place of business in that state. FAC ¶ 6. There are no allegations that NextEra has ever generated or sold wholesale firm baseload power on the Island of Hawai`i. In fact, the only purported connection between NextEra and Hawai`i is NextEra's *unsuccessful* attempt to merge with HEI, from which Hu Honua alleges that NextEra gained "control over HECO's/HELCO's conduct." *Id.* ¶ 56. As discussed above, the allegations of control are unsupported legal conclusions and are at odds with the actual language of the HEI-NextEra merger agreement.

But even if NextEra exercised some form of control over the relevant market or exerted influence upon the competitors therein, NextEra still has never been a competitor. It has never possessed market share, offered products for sale, generated power, or recognized revenue in the relevant market. "It is axiomatic in antitrust law that a defendant may not be found liable under the Sherman act for monopolizing or attempting or conspiring to monopolize a market unless *that defendant* is a competitor in the relevant market and his conduct creates a

dangerous probability that *he* will gain a dominant share of the market."

*Transphase Sys., Inc. v. S. Cal. Edison Co*., 839 F. Supp. 711, 717 (C.D. Cal. 1993)

(emphasis added; dismissing claims); *see also G.U.E. Tech, LLC v. Panasonic*

*Avionics Corp*., 2015 WL 12696203, at *2-3 (C.D. Cal. Sept. 15, 2015) (same).

Any Section 2 monopolization claim against NextEra must be dismissed.

### 4.    Hu Honua Lacks Antitrust Standing

The federal antitrust claims must be dismissed for an additional

reason:  Hu Honua lacks antitrust standing.  Plaintiff cannot transform its alleged

contract dispute into violations of the federal antitrust laws.

To bring a claim under the Sherman and Clayton Acts, a plaintiff must

have "antitrust standing."  *Associated Gen. Contractors v. Cal. State Council of*

*Carpenters*, 459 U.S. 519, 535 & n.31 (1983).  This requires that the plaintiff's

purported injury be (1) of "the type the antitrust laws were intended to forestall"

(often referred to as "antitrust injury"), and (2) the "direct result of [defendants']

allegedly anticompetitive conduct," among other things.  *Am. Ad Mgmt., Inc. v.*

*Gen. Tel. Co*., 190 F.3d 1051, 1054-55, 1058 (9th Cir. 1999).

Put differently, the antitrust laws are meant to "protect[] competition,

not competitors."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477, 489

(1977).  A plaintiff's alleged loss must flow from that which offends competition

and not just from a purported violation of its own rights.  *Id.; see Atl. Richfield Co.*

*v. USA Petroleum Co*., 495 U.S. 328, 342, 344 (1990) (claim must arise from

"competition-reducing aspect or effect of the defendant's behavior"); *Rebel Oil*, 51 F.3d at 1433 ("If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se.").

This requirement is not "a mere technicality," but is instead "the glue that cements each suit with the purposes of the antitrust laws, and prevents abuses of those laws." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449-50 (6th Cir. 2007) (en banc) (quotation omitted). Antitrust standing is a threshold inquiry that, if failed, requires dismissal at the pleading stage. *See Associated Gen.*, 459 U.S. at 545-46 (dismissing claim); *Gatt Commc'ns, Inc. v. PMC Assocs. LLC*, 711 F.3d 68, 75 (2d Cir. 2013) (antitrust standing a "threshold, pleading-stage inquiry"); *Lorenzo v. Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1300 (S.D. Cal. 2009) (same).

### a.   Hu Honua Alleges a Contract Dispute

Hu Honua alleges injury in the form of $555 million in lost profits, sales, market share, goodwill, and construction costs. FAC ¶¶ 154-155, 163, 165, 172. These purported losses flow from the termination of the PPA with HELCO and nowhere else. *See id.* ¶¶ 155, 165, 172 (purported antitrust damages identical to purported contractual damages). Indeed, Hu Honua's entire lawsuit appears to be predicated on its desire to revive and enforce the PPA. The Complaint, for example, asks that the Court permanently enjoin HELCO "from taking action in

any manner inconsistent with the PPA" and deem the termination of the contract invalid.  *Id.* ¶ 207 & 94-95 (prayer for relief).

The Complaint further explains that the suit arises from a controversy "concerning [the parties'] respective rights and duties" under the agreement and the need for "a judicial determination of [those] rights and duties" in order to "inform the parties' future conduct."  *Id.* ¶¶ 203-207.  This is borne out in the allegations, which relate almost exclusively to the contract and the proper application of its terms.  *See, e.g., id.* ¶¶ 36-51, 58-89, 101-126.[9]

Breach-of-contract grievances of this kind cannot support an antitrust suit, even when sprinkled with antitrust jargon.  It is well-established that attempts "to wedge an antitrust claim into a case grounded on alleged common-law tort and breach of contract claims will be dismissed without leave to amend."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *13 (N.D. Cal. June 5, 2009).  Indeed, if a plaintiff's "most specific claims of injury involve matters that are not subject to review under the antitrust laws" and can "be remedi[ed] under other laws"—like injuries that flow from a breach of contract—the plaintiff lacks antitrust standing.  *Associated Gen.*, 459 U.S. at 526-27, 543 (no antitrust standing

---

[9]  The Hawaiian Electric Defendants similarly acknowledge that this litigation arises from a contract dispute.  *See* Mot. to Compel Arbitration & Dismiss Compl. at 1, Dkt. 33-1 (Feb. 16, 2017) ("All of Plaintiff's claims against the Hawaiian Electric Defendants are essentially just assertions of a breach of contract.").

despite allegations that defendants' anticompetitive behavior breached contracts in various ways and diverted business to firms that defendants controlled).

      *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co*., 113 F.3d 405 (3d Cir. 1997), is instructive.  In that case, Schuylkill, an independent power producer, entered a twenty-year power purchasing agreement with Pennsylvania Power & Light ("PP&L"), an electric utility company that sold electricity directly to consumers.  *Id*. at 411.  The contract obligated PP&L to purchase Schuylkill's total energy output at established prices, with limited exceptions.  *Id*.  Schuylkill eventually sued, alleging that PP&L inappropriately cut its purchases in order to bolster its own power plants and exclude independent producers like Schuylkill.  *Id*. at 412.  The complaint alleged violations of Section 2 of the Sherman Act as well as breach of contract and state law torts.  The Third Circuit dismissed the suit for lack of antitrust injury.

      Schuylkill claimed that PP&L's behavior caused it to lose sales, revenue, and cost-savings, while consumers were injured by artificially high rates, deprivation of "energy sources other than those owned and/or exploited by PP&L," and the reduction of power produced using "alternative, environmentally pro-active energy sources."  *Id*. at 413 & n.6.  The court rejected each so-called injury. It explained that Pennsylvania's Public Utility Commission, not PP&L or any other utility, ultimately determined rates, which meant that any complaints about rates or

rate bases "should be brought before the PUC, not to federal court on an antitrust complaint." *Id.* at 414.

Similarly, the deprivation of non-PP&L energy generators did not injure the public because Schuylkill did not actually compete to sell energy to consumers, it merely supplied energy to PP&L. *Id.* at 414-15. And the court explained that "while the environmental quality of energy sources may be a worthwhile concern, it does not appear to be a problem whose solution is found in the Sherman Act." *Id.* at 414 n.9. Ultimately, the "fundamental dispute" raised by the suit "concern[ed] the interpretation of the Power Purchasing Agreement" and the parties' obligations under it. *Id.* at 418. Those issues had to "be resolved pursuant to common-law contract principles," not an antitrust suit. *Id.*[10]

*Schuylkill* is not alone. *In Orion Pictures Distribution Corp. v. Syufy Enterprises*, 829 F.2d 946 (9th Cir. 1987), the plaintiff alleged that Syufy unlawfully monopolized the relevant market, and in so doing illegally repudiated a contract with plaintiff. *Id.* at 949. The Ninth Circuit rejected the claim for lack of antitrust injury. It explained that Syufy's "duties to Orion were fixed by its contractual commitment[s]" and there were no allegations that the purported monopoly influenced the lawful formation of that agreement. *Id.* "Because

---

[10]   Schuylkill's personal injuries were not antitrust injuries because "injuries to an individual competitor company, without allegations of injury to competition or consumer welfare, are insufficient as a matter of law." *Id.* 413 n.6.

competition was no longer a factor in determining Syufy's obligation to Orion,

Orion's injury [did] not reflect the anticompetitive effect of Syufy's alleged

monopolization.  Orion has suffered a breach of contract, not an antitrust injury."

*Id*. (quotation omitted); *see also McMahon v. Pier 39 Ltd. P'ship*, 2001 WL

1463814, at *3 (N.D. Cal. Nov. 8, 2001) (dismissing claim; despite breach of

contract "motivated by a desire to" benefit plaintiff's competitor, no plausible

allegation of competitive impact).

   **b.**  <u>Hu Honua Has Not Alleged Harm to Competition</u>

   Like the plaintiffs in *Schuylkill* and *Orion*, Hu Honua has not

adequately alleged harm to competition or injuries flowing therefrom.  In addition

to its purported loss of sales, profits, and goodwill, Hu Honua alleges only in

conclusory fashion that the termination of the PPA has led to the following

anticompetitive effects:  (1) "consumers will be forced to pay supra-competitive

prices for power as a result" of less competition from Hu Honua; (2) "Hawai`i's

efforts to accomplish its 100% renewable portfolio standard have been thwarted";

and (3) heightened barriers to entry.  FAC ¶ 152; *see id.* ¶ 162.  None of these

allegations supports an antitrust claim.

   ***Increased Rates and Loss of Competition***:  The Hawai`i PUC

oversees "all aspects of a public utility's business practices and transactions."

*Kealia Water Co. Holdings, LLC v. Plantation Partners Kauai, LLC*, 665 F. Supp.

2d 1189, 1197 (D. Haw. 2009).  This includes the obligation to scrutinize and

approve public utility rates and changes thereto, a process that requires notice, a contested hearing, testimony from the public, and a determination that the rates are "just and reasonable."  Haw. Rev. Stat. § 269-16.  The PUC also has the power to investigate financial transactions, business relations, compliance with state and federal laws, as well as "all matters of every nature affecting" a utility's relations with others.  *Id.* § 269-7(a).  HELCO is a public utility.  FAC ¶¶ 21, 186.

Because HELCO and the other Defendants cannot unilaterally change rates or charge anything other than approved prices, Hu Honua's purported concern over rates "should be brought before the PUC, not to federal court on an antitrust complaint."  *Schuylkill*, 113 F.3d at 414.  What is more, although the Complaint alleges that consumer prices have risen above competitive levels (FAC ¶¶ 159-160, 162), this allegation is unsupported by facts.  There are no allegations regarding what HELCO charged prior to the PPA's termination or what it charges now.  And there are no allegations that the PUC has approved anticompetitive prices or otherwise neglected its duty to ensure "just and reasonable" rates.

Hu Honua instead advances a maze of conjecture:  Consumers *might* enjoy lower prices *if* Hu Honua escapes the agreed-upon PPA, *if* Hu Honua's preferred modifications to the PPA become reality, *if* fossil fuel prices experience an "enormous increase" to $300 per barrel in the year 2045, *if* no alternative sources of power become available, *if* HELCO continues to use "old, inefficient, and dirty" power plants, and *if* the PUC approves the offending rate increases.  *Id.*

¶ 122.  Such speculative pleading cannot support a claim of antitrust injury.

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 230-31

(1993) (rejecting "theory of competitive injury" that rested on "complex chain of

cause and effect").

Indeed, if there "is no way to determine whether the rates [consumers]

will pay for electric service are or will be affected by the alleged actions"—for

example because PUC approval is necessary and a number of future events must

fall into place—such injury is "not simply difficult to measure," but it is

"impossible to prove" and "simply too speculative to permit relief under the

antitrust laws."  *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 268-69

(3d Cir. 1998) (affirming dismissal).  It "is an axiom of antitrust law . . . that

merely saying so does not make it so for pleading-sufficiency purposes."  *Howard*

*Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 258 (3d Cir. 2010).

The general contention that consumers have been deprived of

competition that would otherwise "lower the price of power" fares no better.  FAC

¶ 145.  Under no circumstances could Hu Honua compete to sell power directly to

the public.  The PPA ensures that HELCO has the right to purchase all of Hu

Honua's maximum available capacity.  *Id.* ¶ 46.  And the law is clear that entities

like Hu Honua—a "Qualifying Facility" under the Public Utility Regulatory

Practices Act ("PURPA"), 16 U.S.C. § 2601 *et seq.* (FAC ¶ 45)—are "not

competitors of public utilities" because they "*are not authorized under PURPA to*

*sell at retail.*"  *Greensboro Lumber Co. v. Ga. Power Co.*, 643 F. Supp. 1345, 1373

(N.D. Ga. 1986), *aff'd* 844 F.2d 1538 (11th Cir. 1988) (emphasis added; rejecting

claims for lack of antitrust injury and other defects); *see Schuylkill*, 113 F.3d at 415

(same).

      Even in the wholesale firm baseload power generation market, to the

extent such a market exists, "qualifying facilities" like Hu Honua are "*insulat[ed]*

*from competition.*"  *Greensboro Lumber*, 643 F. Supp. at 1373 (emphasis added).

Utilities generally have to "purchase available energy and capacity from qualifying

facilities before buying power from anywhere else."  *Id.*; *see* 18 C.F.R. § 292.303.

And public utilities must offer purchase prices equal to, but no more than, the cost

they would have spent to acquire power from another source, although the parties

can negotiate.  18 C.F.R. § 292.304(b); 16 U.S.C. § 824a-3(b) & (d); *Greensboro*

*Lumber*, 643 F. Supp. at 1372-73.

      The public consequently has not been deprived of competition (over

prices or anything else) in any market.  And absent some "competition-*reducing*"

effect, there can be no antitrust injury.  *Atl. Richfield*, 495 U.S. at 344; *see W. Penn*

*Power*, 147 F.3d at 269 (no antitrust injury when utilities did not actually compete

in relevant market); *Rebel Oil*, 51 F.3d at 1433 (if conduct was "neutral to

competition, there is no antitrust injury, even if the defendant's conduct is illegal

per se"); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 436

(9th Cir. 1992) (energy supplier did not adequately allege loss of competition after power-supply contract fell apart).

**Loss of Renewable Energy:**  The law is clear that purported environmental harms—such as less than 100 percent renewable energy in a public utility's portfolio—are not antitrust injuries.  When "the harm to be alleviated is environmental, not economic in the antitrust sense," dismissal is appropriate for failure to "serve any function of the antitrust laws."  *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976); *see Schuylkill*, 113 F.3d at 414 n.9 & 417 (same).

**Heightened Barriers to Entry:**  Hu Honua alleges that Defendants have raised barriers to entry into the firm baseload power generation market.  FAC ¶ 162; *see id*. ¶¶ 152, 160.  The Complaint only identifies two such barriers:  high capital investments and HELCO's purported monopoly.  Id. ¶ 147.  The Complaint attributes all barriers to Defendants, although it does not explain how Defendants purportedly implemented, raised, or influenced the nature of capital investments necessary to build power generating facilities.  This is a fatal omission.  An antitrust injury is one that "flows from that which makes *defendants*' acts unlawful."  *Brunswick*, 429 U.S. at 489 (emphasis added).  If the supposed effect— here a barrier to entry—would be the same absent any action by Defendants, there is no antitrust standing to sue.  *Id*. at 487-88; *Amerinet, Inc. v. Xerox Corp*., 972 F.2d 1483, 1494 (8th Cir. 1992).

With respect to HELCO's purported monopoly, Hu Honua alleges that new entry is discouraged because HELCO can (1) "refuse to do business with [independent power producers ('IPPs')] in the power generation market" and (2) "dictate the terms and conditions pursuant to which IPPs can interconnect with [HELCO's] transmission and distribution system."  FAC ¶¶ 25, 147.  This simply is not true.  "[U]tilities purchase available energy and capacity from qualifying facilities before buying power from anywhere else," and they must "make all necessary interconnections with any qualifying facility in order to accomplish the aforementioned purchases and sales."  *Greensboro Lumber*, 643 F. Supp. at 1372-73 (citing 18 C.F.R. § 292.303); *see* 18 C.F.R. § 292.306 (interconnection terms must be on "a nondiscriminatory basis with respect to other customers with similar load characteristics"; state regulatory authorities set terms when they have ratemaking authority over relevant utilities).  HELCO's rates, terms, and interactions with power generators are subject to oversight by the PUC, which is contrary to the suggestion that HELCO has unfettered discretion.  Haw. Rev. Stat. § 269-7, 16.

* * * * *

This leaves Hu Honua's purported injuries of lost profit, sales, market share, and goodwill arising from the termination of the PPA.  FAC ¶¶ 154, 163, 172.  But these personal injuries are not cognizable antitrust injuries.  *Schuylkill*, 113 F.3d at 413 n.6; *Orion*, 829 F.2d at 949; *Rutman Wine Co. v. E&J Gallo*

*Winery*, 829 F.2d 729, 734-35 (9th Cir. 1987) (dismissing claims; injury to

plaintiff's business insufficient); *Marin v. Landgraf*, 2013 WL 356623, at *8

(D.N.J. Jan. 29, 2013) (courts "consistently dismiss[] asserted antitrust claims

when plaintiffs masquerade personal injury in the guise of an antitrust allegation

even in the presence of a connection to a market effect of higher prices or

decreased output"). As such, Hu Honua's contractual grievances have no place in

federal court as an antitrust suit against NextEra.

## B.     PLAINTIFF'S STATE LAW CLAIMS AGAINST NEXTERA MUST BE DISMISSED

### 1.     Hu Honua's Hawaiʻi Antitrust Claims Fail

Hawaiʻi's antitrust law "shall be construed in accordance with judicial

interpretations of similar federal antitrust statutes." Haw. Rev. Stat. § 480-3. As a

result, Hu Honua's state-law antitrust claims must be dismissed for the same

reasons that their corresponding federal claims fail. *Int'l Healthcare Mgmt. v.*

*Haw. Coal. for Health*, 332 F.3d 600, 609 (9th Cir. 2003) (state antitrust claims

failed for same reasons as federal counterparts); *Hoilien v. OneWest Bank, FSB*,

2012 WL 1379318, at *13 (D. Haw. Apr. 20, 2012) (same); *Gorospe v. New*

*Century Mortg. Corp.*, 2011 WL 3734230, at *5-6 (D. Haw. Aug. 23, 2011)

(same).

In short, it is not enough to offer conclusory statements about

anticompetitive acts. Hu Honua must instead explicitly allege the nature of the

competition in which NextEra was engaged.  *Davis v. Four Seasons Hotel Ltd*., 228 P.3d 303, 318-19, 325 (Haw. 2010).  And Hu Honua must allege that it was damaged by reason of NextEra's unfair competition.  *Id*.  Hu Honua has done neither.  Although Hu Honua lards its allegations with conclusory statements about "immoral, unethical, oppressive [and] unscrupulous" acts and alleged injuries to its business (FAC ¶¶ 154-155, 197), the Complaint contains no factual allegations regarding the nature of the competition in which NextEra supposedly engaged or how NextEra purportedly caused Hu Honua any injury thereby.  In fact, NextEra never entered the relevant market—its merger with HEI failed—so it was never in a position to compete, unfairly or otherwise.  The Hawai`i antitrust claims must consequently be dismissed.  *Davis*, 228 P.3d at 318-19; *Hoilien*, 2012 WL 1379318, at *13.

   **2.**  **The Complaint Does Not Adequately Allege Tortious Interference**

    To state a claim for tortious interference with contractual relations, Hu Honua must allege (1) a contract between it and a third party; (2) that NextEra knew of the contract; (3) that NextEra intentionally induced the third party to breach its contract; (4) the absence of any justification for NextEra's actions; (5) the subsequent breach of the contract by the third party; and (6) damages to Hu Honua.  *Gold Refinery, LLC v. Aloha Island Gold, LLC*, 2012 WL 518396, at *9 (D. Haw. Feb. 15, 2012) (dismissing claims).

With respect to the third element, Hu Honua must advance facts indicating that NextEra "induced" the complained-of breach, which means that it "move[d]" a third party "by persuasion or influence." *United States v. Rashkovski*, 301 F.3d 1133, 1136-37 (9th Cir. 2002) (quotation omitted); *see Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) (the term "induce" means "[t]o lead on; to influence; to prevail on; to move by persuasion or influence" (quotation omitted)).  Hu Honua must also adequately allege that NextEra "acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse, or, in other words, the willful violation of a known right." *Gold Refinery*, 2012 WL 518396, at *9 (quotation omitted).

Hu Honua fails at the outset.  The Complaint alleges only that "*HELCO* submitted a request to NextEra for its consent to terminate Hu Honua's" contract and that "NextEra approved the termination."  FAC ¶ 118 (emphasis added); *see also id.* ¶¶ 119, 129 (same).  There are no allegations that NextEra led, prevailed upon, or otherwise persuaded any entity to terminate the PPA.  NextEra only approved HELCO's decided-upon course of action.  *Id.* ¶ 120.  Such allegations do not plausibly allege intentional inducement of a breach.  *Meridian Mortg., Inc. v. First Hawaiian Bank*, 122 P.3d 1133, 1144-45 (Haw. Ct. App. 2005) (rejecting claim when party to contract, rather than defendant, initiated purportedly offending conduct).

Equally important, the merger agreement between NextEra and HEI prohibited NextEra from unreasonably withholding, conditioning, or delaying its consent for material-contract actions decided upon by HEI or its subsidiaries.  The Complaint contains no plausible allegations suggesting that NextEra should have withheld its consent and blocked HELCO's termination of the PPA, or that NextEra otherwise lacked legal justification in abiding by the terms of its lawful merger agreement.  The "mere allegation that [an action] was improper is a legal conclusion, not a statement of fact," and such deficient pleading requires dismissal. *Gold Refinery*, 2012 WL 518396, at *9-10 (quotation omitted; failure "to allege specific facts that, if true, would establish that [a defendant] lacked legal justification" requires dismissal); *see Young Bros., Ltd. v. Int'l Longshore & Warehouse Union, Local 142*, 250 F. Supp. 2d 1244, 1251 (D. Haw. 2003) (same).

## V.    CONCLUSION

For the foregoing reasons, Hu Honua's dispute with the Hawaiian Electric Defendants is not NextEra's fight.  Accordingly, NextEra requests that the Court dismiss all claims against NextEra with prejudice.

DATED: Honolulu, Hawai`i, May 3, 2017.

 /s/ Paul Alston
PAUL ALSTON
CLAIRE WONG BLACK
KENNETH R. O'ROURKE
SARAH A. PFEIFFER
RAUL A. CAMPILLO
Attorneys for Defendant NEXTERA ENERGY, INC.