IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HU HONUA BIOENERGY, LLC, a Delaware Limited Liability Company,<br><br>              Plaintiff,<br><br>   vs.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., a Hawaii Corporation; HAWAIIAN ELECTRIC COMPANY, a Hawaii Corporation; HAWAII ELECTRIC LIGHT COMPANY, INC., a Hawaii Corporation; NEXTERA ENERGY, INC., a Florida Corporation; HAMAKUA ENERGY PARTNERS, L.P., a Hawaii Limited Partnership,<br><br>              Defendants. | Civ. No. 16-00634 JMS-KJM<br><br>AMENDED ORDER GRANTING IN PART DEFENDANTS NEXTERA ENERGY, INC.'S AND HAMAKUA ENERGY PARTNERS, L.P.'S MOTIONS TO DISMISS, ECF NOS. 73 & 95, WITH LEAVE TO AMEND |

**AMENDED ORDER GRANTING IN PART DEFENDANTS NEXTERA ENERGY, INC.'S AND HAMAKUA ENERGY PARTNERS, L.P.'S MOTIONS TO DISMISS, ECF NOS. 73 & 95, WITH LEAVE TO AMEND**

## I. INTRODUCTION

Plaintiff Hu Honua Bioenergy, LLC ("Hu Honua") contracted with

Defendant Hawaii Electric Light Company, Inc. ("HELCO") to build an

independent power plant run on biomass to supply energy to HELCO on the Big

1

Island of Hawaii.  Given problems with the construction contractor and other labor issues, Hu Honua was unable to complete the facility on time.  After unsuccessful negotiations to extend deadlines, HELCO cancelled the contract.

Hu Honua filed this suit contending that HELCO's cancellation was, among other things, the result of an illegal conspiracy in violation of antitrust laws.  The suit alleges federal antitrust and related state-law claims against HELCO; Hawaiian Electric Company, Inc. ("HECO"); Hawaiian Electric Industries, Inc. ("HEI"); NextEra Energy, Inc. ("NextEra"); and Hamakua Energy Partners, L.P. ("HEP").  It also alleges that HELCO breached the contract by refusing to extend deadlines under the contract's terms.

The court now addresses Motions to Dismiss brought by NextEra and HEP under Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 73, 95.  Based on the following, the Motions are GRANTED in part.  The federal antitrust claims are DISMISSED as to NextEra and HEP, with leave to amend.  The Motions are DENIED without prejudice as to the state-law claims against NextEra and HEP. Hu Honua may file a Second Amended Complaint by January 29, 2018.[1]

---

[1] This Order amends and supersedes the court's December 19, 2017 Order regarding NextEra's and HEP's Motions to Dismiss to add minor changes as reflected in the court's concurrently-filed Order (1) Granting In Limited Part Plaintiff Hu Honua Bioenergy, LLC's First Amended Motion for Reconsideration or Clarification, ECF No.133; and (2) Amending December 19, 2017 Order.

## II. **BACKGROUND**

**A.** **Factual Background**

Hu Honua's 96-page First Amended Complaint ("FAC"), ECF No.
27, describes the structure of the electric utility market in Hawaii — in particular,
on the island of Hawaii (the Big Island) — and alleges in detail a scheme (although
ultimately deficiently, at least as to its antitrust claims) whereby HELCO's
cancellation of the contract not only breached certain of its terms but was also part
of a conspiracy or conspiracies among NextEra, HEP and the other Hawaiian
Electric Defendants[2] to monopolize or restrain trade in violation of antitrust laws.

After suit was filed, Hu Honua and the Hawaiian Electric Defendants
reached a settlement in conjunction with a renegotiated contract for Hu Honua to
complete its biomass power plant. ECF No. 122. Consummation of that
settlement is awaiting final completion of the approval process involving the
Hawaii Public Utilities Commission ("PUC").[3] Perhaps because of that settlement,
the Hawaiian Electric Defendants have not moved to dismiss the FAC. (Earlier,
they filed a motion seeking to compel arbitration, but asked the court to hold that

---

[2] The court sometimes refers to HELCO, HECO, and HEI collectively as the "Hawaiian Electric Defendants."

[3] The PUC has approved the renegotiated contract, and construction of the facility is ongoing, although the final settlement with the Hawaiian Electric Defendants is awaiting disposition of a related state-court appeal of the PUC-approval. *See* ECF No. 122.

motion in abeyance, pending consummation of the settlement, ECF No. 126).

Because only NextEra and HEP have moved to dismiss, the court focuses on

setting forth the essential factual allegations against them. That is, the court need

not (and does not) reiterate all the details alleged in the lengthy FAC as to the

Hawaiian Electric Defendants, but describes those facts necessary to put the claims

against NextEra and HEP into proper context. And some of the relevant factual

allegations are set forth later, in the appropriate discussion sections analyzing

particular claims. For present purposes, the court assumes as true any well-pleaded

factual allegations set forth in the FAC.

### 1. The Basic Structure of the Electric Utility Market in Hawaii

Unlike on the continental United States — where states and utilities

may utilize large interconnected, interstate power grids comprised of high-voltage

transmission lines — each island in the State of Hawaii has its own isolated grid

and power supplies. FAC ¶¶ 14-16. HECO is such an electric utility providing

electricity to consumers on the island of Oahu; likewise, HELCO is the electric

utility providing electricity to the Big Island. *Id.* ¶ 17. (Although not a defendant,

Maui Electric Company ("MECO") powers the islands of Maui, Lanai, and

Molokai. *Id.*[4]) HEI is a holding company, with HECO as one of its subsidiaries. In turn, HELCO and MECO are subsidiaries of HECO. *Id.* ¶¶ 3-5.

Power supplied to electric utilities (which utilities then provide to retail consumers) is divided into two basic categories: "firm power" and "intermittent power." *Id.* ¶ 18. "Firm power" (generated by fossil fuels, geothermal, biomass, and similar sources) is power that is intended always to be available during "the period covered by a guaranteed commitment to deliver." *Id.* In contrast, "intermittent" power consists of sources such as wind or solar that are not always available, "with output controlled by the natural variability of the energy resource rather than power dispatched based on system requirements." *Id.*

Much of Hawaii's power currently comes from fossil fuels. "77% of Hawaii's electricity is generated by petroleum, making the State's utility the most oil dependent in the country. All of the petroleum consumed in the State is generated from crude oil imported from South East Asia and other off-shore locations." *Id.* ¶ 11. And so, "[t]o mitigate the risk of dependence on foreign fuel sources, the Hawaii state government policies and legislation have sought to place greater emphasis on the development of renewable energy resources[.]" *Id.* ¶ 13.

---

[4] The island of Kauai is served by Kauai Island Utility Cooperative, which is an entity not related to any of the Defendants.

"[I]n June 2015, the Hawaii Legislature amended Hawaii's Renewable Portfolio Standard statute to require Hawaii to move towards achievement of 100% renewable energy by 2045." *Id.*

HELCO serves approximately 85,000 customers on the Big Island. *Id.* ¶ 21. "HELCO currently owns fossil fuel plants that generate in excess of 65% of the [Big] Island's dispatchable firm electrical capacity." *Id.* Specifically, it "owns and operates six oil-fired power generation plants, accounting for 184 MW [(megawatts)] of firm power capacity[.]" *Id.* ¶ 28. "In addition to its own fossil fuel plants, HELCO purchases firm power generation capacity [and electrical energy] from HEP, which owns a 60 MW fossil-fuel combined cycle power plant, pursuant to a 1997 Power Purchase Agreement." *Id.* ¶ 22. "HEP is one of only two independent power producers ('IPPs') on the Island of Hawaii that provides firm power generating capacity." *Id.* ¶ 23. The other is Puna Geothermal Venture "whose power capacity is 34.6 MW, only part of which is firm." *Id.*

"HELCO is compensated differently for the power that it generates itself through the power plants that it owns versus the power that it purchases from IPPs." *Id.* ¶ 32. "In fact, as a result of HELCO's ability to recover its capital costs, and an annual fixed rate of return on those costs, HELCO receives more revenue

through the rates paid by its customers for the sale of power that HELCO generates from running its own units than from the power it purchases from IPPs." *Id.*

"In Hawaii, IPPs must sell power to a public utility because Hawaii's utilities have not permitted the use of their grids for the 'wheeling' or transmission of power to power purchasers, and because it would be economically impractical for IPPs to build their own transmission and distribution system." *Id.* ¶ 24. "As a result, HELCO is not only the monopoly retail seller of electricity on the Island of Hawaii, but also the monopoly owner of electricity transmission and distribution infrastructure and monopoly purchaser of wholesale electricity." *Id.*

### 2. *The Hu Honua Power Purchase Agreement*

In May 2012, Hu Honua entered into a Power Purchase Agreement for Renewable Dispatchable Firm Energy and Capacity ("the Hu Honua PPA" or "the Contract") with HELCO under which Hu Honua would develop an independent power plant on the Hamakua Coast of the Big Island, with a renewable biomass fuel source (e.g., eucalyptus trees) of firm power. *Id.* ¶¶ 1, 34, 38. "The trees were to be 100% locally grown and harvested on a sustainable rotational basis and would have provided an important means to reduce Hawaii's dependence on imported fossil fuels." *Id.* ¶ 34.

Hu Honua's power plant would supply HELCO with "no less than 10 MW of electricity capacity at all times," with the facility having a "maximum 'Available Capacity' of approximately 30 net MW." *Id.* ¶ 46. Hu Honua began construction in late October 2012, but was unable to complete the facility by the end of 2015, as contemplated by the Hu Honua PPA, because of disputes with its construction contractor, labor union issues, and related litigation. *Id.* ¶¶ 51, 58.[5] After unsuccessful negotiations between Hu Honua and HELCO to extend milestone dates as provided in the Hu Honua PPA (where milestone-date extension requests "shall not be unreasonably withheld," *id.* ¶ 42), HELCO cancelled the Contract on March 1, 2016. *Id.* ¶ 60.

### 3. NextEra's Proposed Merger with HEI, and HELCO's Proposed Purchase of HEP's Power Plant

Meanwhile, two other relevant things happened: First, "the proposed merger" — on December 3, 2014, NextEra, which is a large Florida-based utility holding company, and HEI entered into an Agreement and Plan of Merger (the

_____

[5] HEP provides a listing from Hawaii state court records of "28 different legal actions against Hu Honua during this time period, including one that resulted in Hu Honua losing control of the facility until it paid a stipulated judgment." ECF No. 95-1, Mem. at 8-9 (citing Egesdal Decl., Ex. D, ECF No. 95-6). Although the court has not reviewed the substance of these actions, the court takes judicial notice of the existence and number of state court actions. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). And, according to the FAC, "Hu Honua's disputes with its former construction contractor and the labor union jurisdiction dispute caused an irretrievable loss of time . . . [such that] Hu Honua realized that it would not be able to achieve two milestone[] dates set forth in the PPA[.]" FAC ¶ 58.

"NextEra/HEI Merger Agreement" or "Merger Agreement") under which HEI subsidiaries HELCO and HECO would become wholly-owned subsidiaries of NextEra. *Id.* ¶¶ 6, 52.[6] And second, "the proposed purchase" — on December 23, 2015, HECO and HELCO publicly disclosed that HELCO would purchase HEP's 60 MW fossil-fuel power plant for over $88 million. *Id.* ¶¶ 22, 91.[7]

"Article V of the Merger Agreement addresses certain issues relating to HECO's conduct of its and its subsidiaries' business during the pendency of the merger. Among other things, Article V prohibited HECO from engaging in several activities without NextEra's prior consent." *Id.* ¶ 56. Specifically, "§ 5.01(a)(xii) provides that HECO/HELCO shall not:

---

[6] The Merger Agreement required approval by the PUC. But after several months of hearings, the PUC rejected the Merger Agreement on July 15, 2016. *See, e.g.*, Kathryn Mykleseth, *PUC Rejects NextEra's Purchase of Hawaiian Electric, Honolulu Star-Advertiser*, July 15, 2016 (*available at* http://www.staradvertiser.com/2016/07/15/business/business-breaking/puc-rejects-nexteras-purchase-of-hawaiian-electric/(last visited Dec. 15, 2017).

[7] On May 4, 2017, the PUC rejected HELCO and HECO's application to approve the purchase of HEP's facility. *See* Egesdal Decl., Ex. B., ECF No. 95-4 (*In re Hawaiian Electric Co.* (Hawaii P.U.C. May 4, 2017) (Decision and Order No. 34536)). The court takes judicial notice of publicly-available decisions of the PUC. *See, e.g.*, *Bartolotti v. Maui Mem'l Med. Ctr.*, 2015 WL 4545818, at *3 (D. Haw. July 28, 2015) ("The court may 'take judicial notice of 'matters of public record[,]' 'as long as the facts noticed are not 'subject to reasonable dispute.'") (quoting *Intri–Plex Techs., Inc. v. Crest Grp., Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007)); *id.* ("'Matters of public record that may be judicially noticed include records and reports of administrative bodies,' and documents filed with courts, 'both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.'") (quoting *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) & *United States v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992)).

(1) enter into, terminate or amend in any material respect any material Contract,
(2) consent to any extension or continuation of any material Contract . . . or
(3) waive any material right on any material Contract[.]"

FAC ¶ 56.[8] Based on this consent provision, Hu Honua alleges that NextEra "exercised total control over HECO's/HELCO's conduct of their important business actions and material agreements, including the fate of Hu Honua's PPA." *Id.*

As for HELCO's proposed purchase of the HEP power plant, Hu Honua alleges that its biomass facility "would have been a direct competitor to the HEP Power Plant in the supply of wholesale electricity capacity to HELCO." *Id.* ¶ 90. Hu Honua alleged "[o]n information and belief, HELCO planned to acquire the HEP Power Plant in order to further HELCO's strategy to increase its

---

[8] Paragraph 5.01(a) of the Merger Agreement also provides that such consent "shall not be unreasonably withheld, conditioned or delayed." ECF No. 73-3 at 5, Merger Agreement at 38. And Paragraph 5.01(c) reads in part:

> No Control of [HEI's] Business. [NextEra] acknowledges and agrees that (i) nothing contained in this Agreement is intended to give [NextEra], directly or indirectly, the right to control or direct the operations of [HEI] or an [HEI] Subsidiary prior to the Effective Time and . . . prior to the Effective Time, [HEI] shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision over its and [HEI's] Subsidiaries' respective operations.

ECF No. 73-3 at 10, Merger Agreement at 43.

monopoly over power generation on the Island of Hawaii." *Id.* ¶ 92. "On

information and belief, HELCO favors its own power generation instead of

purchasing power from Hu Honua, because HELCO generates more profit by

owning its own power generation." *Id.* And, as for HEP's motivation, it alleges

that

> HEP had its own reasons for wanting the Hu Honua PPA
> terminated. As early as 2012, HEP recognized that the
> proposed Hu Honua Facility was a direct competitive
> threat. On September 19, 2012, it filed a motion to
> intervene in the Commission's docket for HELCO's
> Application for Approval of the Hu Honua PPA, which it
> vigorously opposed on the grounds that "[t]he
> introduction of the proposed Hu Honua plant would,
> according to [the] HELCO plan outlined in its
> application, reduce the HEP Plant's dispatch." In sum,
> HEP, as the operator of the largest power plant on the
> Island, attempted unsuccessfully to exclude Hu Honua as
> a competitor in the power generation market. It was
> presented with another opportunity three years later to
> accomplish that objective. Hu Honua is informed and
> believes, and on that basis alleges, that HEP participated
> in and supported the termination of Hu Honua's PPA, as
> alleged [in the FAC].

*Id.* ¶ 99.[9]

---

[9] HEP challenges the FAC's allegation that it "vigorously opposed" Hu Honua's application, pointing to a public document (a 2012 "Statement of Position" before the Hawaii PUC) stating in part: "HEP does not take a position as to the prudence of approving the power purchase agreement. . . . Rather, HEP's position is that if the Commission *does* approve the Hu Honua PPA, it should not do so without requiring that HELCO adequate[ly] consider and plan to

(continued . . .)

### 4. *Hu Honua Files This Action*

After HELCO cancelled the Hu Honua PPA in March of 2016 (and after the PUC rejected the proposed NextEra/HEI Merger Agreement in July 2016), Hu Honua filed the original Complaint in this action on November 30, 2016, ECF No. 1.  It filed the FAC on January 27, 2017, ECF No. 27, alleging the following counts:

- Count One — Violation of Section Two of the Sherman Act, 15 U.S.C. § 2 (attempted monopolization, conspiracy to monopolize, and monopolization) against the Hawaiian Electric Defendants and NextEra;

- Count Two — Violation of Section One of the Sherman Act, 15 U.S.C. § 1 (conspiracy to restrain trade) against all Defendants;

- Count Three — Breach of Contract against HELCO;

- Count Four — Promissory Estoppel against HELCO;

- Count Five — Breach of the Covenant of Good Faith and Fair Dealing against HELCO;

- Count Six — Breach of Fiduciary Duty against HELCO;

- Count Seven — Tortious Interference with Contract against NextEra;

- Count Eight — Unfair Competition in Violation of HRS Chapter 480 against All Defendants;

---

(. . . continued)
deal with the excess generating capacity that the Hu Honua asset would add[.]"  Egesdal Decl. Ex. D at 2, ECF No. 95-3 at 3.

- Count Nine — Declaratory Relief against HELCO; and

- Count Ten — Conversion against HELCO.

FAC at 69-93.  Hu Honua claims it was damaged "in the amount of its investment of $120 million in the plant, plus lost profits of $435 million."  *Id.* ¶ 1.  It seeks treble damages and attorney fees, among other injunctive relief.  *Id.* at 94-95.

Hu Honua alleges that HELCO's cancellation of the Hu Honua PPA was illegal under the Sherman Act in two ways.  First, it alleges that, in conjunction with the proposed Merger Agreement, NextEra conspired with Hawaiian Electric Defendants to monopolize the market for wholesale firm power on the Island of Hawaii, in violation of 15 U.S.C. § 2.  FAC ¶¶ 135-55.  Second, it alleges that HEP (with the proposed purchase by HELCO of HEP's power plant), NextEra and the Hawaiian Electric Defendants conspired to restrain trade in the market for wholesale firm power on the Big Island, in violation of 15 U.S.C. § 1.  *Id.* ¶¶ 156-65.

## B.    Procedural History

On February 16, 2017, the Hawaiian Electric Defendants filed a Motion to Compel Arbitration, ECF No. 33, which was set for hearing on May 22, 2017.  But on May 12, 2017, the Hawaiian Electric Defendants notified the court of the preliminary settlement between them and Hu Honua, and the hearing was

continued until August 7, 2017, to allow the Hawaii PUC to consider the renegotiated Hu Honua PPA.  ECF No. 76, 77.

NextEra filed its Motion to Dismiss on May 3, 2017, ECF No. 73, and HEP filed its Motion on June 2, 2017, ECF No. 95.  The Motions were also set for hearing on August 7, 2017.  (Discovery has been stayed pending a ruling on these Motions.  ECF Nos. 59, 105.)  Hu Honua filed its Oppositions on July 17, 2017, ECF Nos. 108-09, and Replies were filed on July 24, 2017, ECF Nos. 112-13.  On July 17, 2017, the Hawaiian Electric Defendants filed short joinders in both Motions to Dismiss.  ECF Nos. 106-07.

The August 7, 2017 hearing was continued to allow further time for PUC approval of the renegotiated Hu Honua/HELCO PPA, ECF Nos. 115, 117, and was later rescheduled for November 6, 2017, upon request by the parties.  ECF No. 119.  The court then granted a request to hold the Hawaiian Electric Defendants' Motion to Compel Arbitration in abeyance, pending finalization of the settlement, ECF No. 126.[10]  The court, however, proceeded to hear the Motions to Dismiss on November 6, 2017.

_____

[10] Given the pending settlement between Hu Honua and the Hawaiian Electric Defendants, the court is likewise deferring ruling on the joinders by Hawaiian Electric Defendants.  For administrative purposes, as discussed at the November 6, 2017 hearing, the joinders are DENIED as MOOT without prejudice.  ECF No. 127.

# III. <u>STANDARD OF REVIEW</u>

## A.    Rule 12(b)(6)'s Plausibility Standard

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Such a dismissal is proper "'based on the lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

In resolving a Rule 12(b)(6) motion, the court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 784 (9th Cir. 2012) (quoting *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)).  But a "formulaic recitation of the elements of a cause of action" will not defeat a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  This tenet — that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## B.     The Antitrust Context

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). And in analyzing these principles in the *antitrust* context, *Twombly* recognized that "proceeding to antitrust discovery can be expensive," 550 U.S. at 558, and reiterated that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)).

Thus, although *Twombly* did not impose a heightened pleading standard for antitrust conspiracy cases, 550 U.S. at 569 n.14, in this context "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are

insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 553-58 & n.5); *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015) ("We cannot, however, infer an anticompetitive agreement when factual allegations 'just as easily suggest rational, legal business behavior.'" (quoting *Kendall*, 518 F.3d at 1049)). "[C]onduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 n.21 (1986) (citations omitted). And so, "[w]hen considering plausibility, courts must also consider an 'obvious alternative explanation,' for defendant's behavior." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 682).

## C.    General Principles

Rule 12(b)(6) review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nevertheless, courts may "consider certain materials — documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice — without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Courts may also "take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.'" *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (brackets omitted)).

When a complaint is dismissed, the court "'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Leave to amend "is properly denied, however, if amendment would be futile." *Carrico v. City & Cty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. <u>DISCUSSION</u>

### A. Count One (Monopolization) Fails to State a Plausible Claim Against NextEra

Section 4 of the Clayton Act allows "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" to sue for treble damages and costs of suit. 15 U.S.C. § 15(a). Count One asserts such a claim against each of the Hawaiian Electric Defendants and NextEra based upon alleged violations of § 2 of the Sherman Act, which makes it illegal for a

person to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States[.]" 15 U.S.C. § 2. Hu Honua claims that "HELCO's, along with HECO's and HEI's, conduct and practices as described [in the FAC], and as controlled by NextEra, were undertaken for the purpose and have had the effect of monopolizing the market for firm generation of electricity on the Island of Hawaii." FAC ¶ 137. It alleges that "NextEra entered into a contract, combination, or conspiracy with HELCO in furtherance of HELCO's unlawful monopolizing and attempting to monopolize the relevant market in violation of Section 2," FAC ¶ 138, where "the relevant market" is "the market for wholesale firm baseload power generation on the Island of Hawaii." FAC ¶ 139.[11]

A § 2 monopolization claim has three essential elements: "'(a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury.'" *Name.Space, Inc.*, 795 F.3d at 1131 (quoting *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp.*

---

[11] As set forth previously, the Hawaiian Electric Defendants did not file a motion to dismiss (having instead filed joinders in NextEra's and HEP's Motions). Again — because the court has held any motions by the Hawaiian Electric Defendants in abeyance pending the settlement between Hu Honua and the Hawaiian Electric Defendants — this Order focuses on the FAC's allegations against NextEra and HEP. That is, the court is not specifically ruling on whether any claims (antitrust or otherwise) are stated (or not) as to the Hawaiian Electric Defendants.

*LP*, 592 F.3d 991, 998 (9th Cir. 2010)). "Similarly, to state a claim for attempted monopolization, the plaintiff must allege facts that, if true, will prove: '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 506 (9th Cir. 2010) (quoting *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 893 (9th Cir. 2008)). And "[t]o prove a conspiracy to monopolize in violation of § 2, [a plaintiff] must show four elements: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.,* 328 F.3d 1145, 1158 (9th Cir. 2003) (citation omitted).

### 1. *The FAC Fails to State a Claim for Monopolization and Attempted Monopolization Against NextEra*

NextEra argues that any monopolization and attempted monopolization claims against it fail at the outset because — as a power producer in *Florida* — it was never a competitor with Hu Honua in the wholesale firm baseload power generation market on the *island of Hawaii*. *See, e.g.*, *Name.Space, Inc.*, 795 F.3d at 1131 ("Because [defendant] is not a competitor in any of the three markets, they cannot serve as the basis for a § 2 monopoly claim.") (citing *Mercy-Peninsula Ambulance, Inc. v. San Mateo Cty.*, 791 F.2d 755, 759 (9th Cir. 1986)

("The gravamen of a section 2 claim is the deliberate use of market power by a competitor[.]") (other citation omitted)); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 372 (9th Cir. 2003) ("'[T]he party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator[.]'") (quoting *Eagle v. Star-Kist Foods, Inc.*, 812 F.2d 538 (9th Cir. 1987)); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) ("There is no question that [defendant] does not participate in the Spanish-language radio market. Thus, [defendant] cannot *attempt* to monopolize that market.") (emphasis added) (cited with approval in *Name.Space, Inc.*, 795 F.3d at 1131).

In response, Hu Honua clarifies that it "only asserts a claim for *conspiracy* to monopolize against NextEra." ECF No. 109, Opp'n at 34-35 n.8 (emphasis added). In any event, the FAC fails to allege a prerequisite (competitor in the same market) to a § 2 monopolization or attempted monopolization claim against NextEra. Accordingly, Count One, to the extent it alleges § 2 claims for monopolization or attempted monopolization against NextEra, is DISMISSED

with prejudice.[12]  The court thus focuses on whether the FAC adequately alleges a

conspiracy to monopolize as to NextEra.

## 2. *Allegations of Conspiracy to Monopolize Against NextEra Also Fail*

### a. *No specific intent to monopolize*

NextEra initially challenges the conspiracy to monopolize claim by

focusing on the third element of a § 2 conspiracy — "the specific intent to

monopolize." *Paladin Assocs., Inc.,* 328 F.3d at 1158.  NextEra argues that, just

because it agreed to merge with HEI and then approved HELCO's termination of

Hu Honua's PPA, the conspiracy claim fails because the FAC lacks any facts that,

even if true, would plausibly establish that NextEra specifically intended to

monopolize the wholesale firm power generation market on the Island of Hawaii.

*See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1437 n.8 (9th Cir. 1995) ("To

prove a conspiracy to monopolize, Rebel must show that the independent dealers

had the specific intent to conspire to monopolize; it is not enough to show that the

dealers merely agreed to go along with ARCO's pricing."); *see also, e.g.*, *Syufy*

*Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990, 1000 (9th Cir. 1986) ("Nor is there

---

[12] To be clear, this dismissal is only as to monopolization or attempted monopolization claims against NextEra; the court is not reaching to any extent whether such claims are, or could be, properly stated against any other Defendant.

any showing that any of the distributors shared with Syufy a common purpose in monopolizing the hardtop theater market in the San Jose area.").

In response, Hu Honua contends that NextEra's specific intent to monopolize can be inferred from the FAC's allegations that HELCO "has an incentive to favor its own generation over that of competitor power generation," FAC ¶ 142, and that incentive is shared by NextEra as part of its own business strategy. ECF No. 109, Opp'n at 33. Hu Honua emphasizes the FAC's allegations that, during the same time-frame as the proposed NextEra/HEI Merger Agreement, HECO (1) terminated three pending solar power purchase agreements on Oahu (similarly to HELCO's cancellation of Hu Honua's PPA), and (2) submitted plans to the Hawaii PUC to convert some power plants on Oahu to liquefied natural gas, FAC ¶¶ 128, 131, where NextEra also has natural gas assets, and planned to "help HECO execute on plans to bring liquid natural gas to Hawaii" with the merger. FAC ¶ 55 (citation omitted).

But even assuming the FAC adequately alleges that the *Hawaiian Electric Defendants* possessed or sought a monopoly in the relevant power production market, there are no facts pled that would suggest *NextEra* specifically intended to monopolize that market, merely by consenting to HELCO's termination of the Hu Honua PPA. *See Rebel Oil Co.*, 51 F.3d at 1438 n.8 ("[I]t is

not enough to show that [a defendant] merely agreed to go along."); *Syufy Enters.*, 793 F.2d at 1000 ("[A] supplier who licenses a product to another does not join the licensee in a conspiracy to monopolize merely because the licensee turns around and exploits the license for its own monopolistic purposes.").

In this regard, it is not enough to suggest — as Hu Honua does — that NextEra shared a motive to increase prices or profits with a similar strategy. *See, e.g.*, *In re Baby Food Antitrust Litig.,* 166 F.3d 112, 133 (3d Cir. 1999) (rejecting argument, in a price-fixing context, that a motive to achieve higher prices could demonstrate conspiracy because if that were true "every company in every industry would have such a 'motive.'"). "Motivation to enter a conspiracy is never enough to establish a traditional conspiracy." VI Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 1411 (4th ed. 2017).[13]

> b. *No antitrust injury*

More important, even if the FAC alleged enough factual content to support an inference that NextEra specifically intended to monopolize the market for wholesale firm power on the Big Island, the § 2 conspiracy claim nevertheless

---

[13] Furthermore, as analyzed in detail when the court considers Count Two to follow in discussion section B.2.a, the FAC's allegations that NextEra totally controlled HELCO's decisions after the Merger Agreement lack plausibility and thus cannot form the basis of NextEra's specific intent to monopolize.

fails for lack of the fourth element — "causal antitrust injury." *Paladin Assocs., Inc.,* 328 F.3d at 1158. To establish such injury, Hu Honua must allege facts that show "(1) unlawful conduct, (2) causing an injury to [Hu Honua], (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999)). The inquiry focuses on injury to "competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *see also Paladin Assocs., Inc.*, 328 F.3d at 1158 ("Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury."). This requirement stems from "the principle that the antitrust laws' prohibitions focus on protecting the competitive process and not on the success or failure of individual competitors." *Cascade Health Sols.*, 515 F.3d at 902 (citations omitted).

Applying these principles, the FAC's allegations of harm to the "competitive process" in the market for wholesale firm power on the Big Island are implausible. Notably, as alleged in the FAC, Hu Honua's biomass power plant was a "Qualifying Facility under the federal Public Utility Regulatory Policies Act

("PURPA")[.]" FAC ¶ 45. As such a facility, "Hu Honua was entitled to receive special rate and regulatory treatment." *Id.* (Indeed, the Hu Honua PPA was negotiated under a *waiver* by the PUC from its competitive bidding framework. FAC ¶ 49).

PURPA was enacted in 1978, among other reasons, to "ensure sustained long-term economic growth by shifting the nation's reliance on oil and gas to more abundant domestically produced fuels." *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1371 (N.D. Ga. 1986) (citation omitted). To support development of non-traditional generating facilities, PURPA and its implementing regulations

> require electric utilities (a) to sell electric energy and capacity to qualifying facilities upon request, (b) to purchase electric energy and capacity from qualifying facilities and (c) to make all necessary interconnections with any qualifying facility in order to accomplish the aforementioned purchases and sales provided that each qualifying facility pay its share of the interconnection costs.

*Id.* at 1372 (footnotes omitted). PURPA's "regulations mandate that an electric utility offer a qualifying facility built after the enactment of PURPA a purchase rate equal to, but no more than, the utility's 'full avoided costs.'" *Id.* (citations and footnote omitted); *see also Schuylkill Energy Res., Inc. v. Penn. Power & Light Co.*, 113 F.3d 405, 411 (3d Cir. 1997) ("Pursuant to regulations promulgated . . .

under the authority of PURPA, PP&L is required to purchase electric energy from SER.").  The Hu Honua PPA contained such power-purchase provisions.  *See* FAC ¶ 46.

Effectively, then, Hu Honua does not (or would not) "compete" in the power production market with its qualifying facility, and thus competition could not be harmed by termination of its PPA (even if the FAC otherwise states a claim for breach of contract against HELCO).  As *Greensboro Lumber Co.* explained

> In establishing PURPA . . . Congress did not intend to place qualifying facilities in competition with public utilities.  To the contrary, Congress has sought to encourage the development of qualifying facilities by insulating them from competition.  Qualifying facilities are not authorized under PURPA to sell at retail.

643 F. Supp. at 1373 (citation omitted); *see also Schuylkill Energy Res.*, 113 F.3d at 415 (finding no antitrust injury for PURPA power-producer, primarily because "state and federal laws prohibit [plaintiff] from competing in the relevant market"); *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1194, 1207 (W.D.N.Y. 1995) (finding no likelihood of an antitrust injury at a preliminary injunction stage, reasoning in part that "[t]he PPA, which [PURPA-producer] Kamine is attempting to enforce, was not created as a result of market forces or a competitive process; it is a creature of a statutory scheme [(PURPA)] set up for reasons that have nothing to do with competition *per se*"); *Crossroads*

*Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 969 F. Supp. 907, 915

(D.N.J. 1997) (finding no antitrust injury in action brought by PURPA-producer,

reasoning that "Defendant's actions may have caused injury to plaintiff, but they

did not cause injury to competition in a defined market [and was] not the sort of

injury the antitrust laws were meant to prevent"), *rev'd on other grounds*, 159 F.3d

129 (3d Cir. 1998)).  "PURPA was created as a vehicle to reduce the nation's

dependency on foreign oil and to conserve energy, not to foster competition."

*Kamine/Besicorp Allegany L.P.*, 908 F. Supp. at 1204.[14]

Hu Honua attempts to distinguish this authority by arguing that it is

not claiming harm to competition in the *retail* market (i.e., energy to consumers

who pay HELCO for electricity), but rather harm to competition in the wholesale

market for firm power to HELCO.[15]  But Hu Honua is largely not a competitor

---

[14] The court is not suggesting that, just because Hu Honua's facility was a qualifying facility under PURPA, the antitrust laws can never apply. *See* 16 U.S.C. § 2603(1) ("Nothing in this Act or in any amendment made by this Act affects — (1) the applicability of the antitrust laws to any electric utility[.]").  Rather, "while PURPA was not intended to *protect* utilities from the reach of the antitrust laws, neither was it meant to *create* antitrust liability where none existed previously.  In short, PURPA was designed to be antitrust-neutral." *Kamine/Besicorp Allegany L.P.*, 908 F. Supp. at 1204.  And, in this instance, "[h]owever consonant with PURPA's aims it may be to shield a [qualifying facility] like [plaintiff's] from price competition, that end is not something that the antitrust laws were designed to protect." *Id.* at 1205.

[15] Nevertheless, the FAC's allegations of antitrust injury rely in significant part on harm to retail consumers.  Specifically, the FAC alleges that:

(continued . . .)

with HELCO in that market either — Hu Honua would have been HELCO's *supplier*, with HELCO in turn providing electricity to retail rate-paying consumers. *See Schuylkill Energy Res.*, 113 F.3d at 415 (rejecting argument that defendant's policy of favoring its owned-power producers over an independent producer could harm competition because "[plaintiff] is not [defendant's] *competitor* — it is [defendant's] *supplier*").

The court also recognizes that HELCO is also a supplier to itself (through HELCO-owned power plants). But it is difficult to find plausible harm to competition from Hu Honua in that limited "market," even considering that HEP also provides wholesale power with its independent fossil-fuel power plant.

(. . . continued)

> HELCO's anticompetitive acts have caused substantial economic injury to Hu Honua and have also injured competition in the relevant markets by, inter alia, foreclosing, lessening, and eliminating potential competition *and depriving consumers from securing lower rates paid for power.*

FAC ¶ 151 (emphasis added).

> The aforesaid conduct of HELCO has produced antitrust injury to Hu Honua, competition, and consumers, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:
>     (a) competition for the wholesale generation of power on the Island of Hawaii has been substantially and unreasonably restricted, lessened, foreclosed, and eliminated, *and consumers will be forced to pay supra-competitive prices for power as a result*;

FAC ¶ 152 (emphasis added).

Indeed, the cases cited previously also found no antitrust injury where independent power producers also claimed harm in wholesale markets. *Greensboro Lumber Co.* reasoned that,

> [I]n the wholesale market, PURPA establishes a guaranteed price which is equal to, or greater than, the price that would be received in a competitive market. In addition to providing a guaranteed price to qualifying facilities, PURPA also provides a guaranteed market for the power generated by qualifying facilities by making it a requirement that utilities purchase available energy and capacity from qualifying facilities before buying power from anywhere else; *no amount of price cutting or other competition can change this result.*

643 F. Supp. at 1373 (emphasis added). "In general, qualifying facilities produce a component which is used by public utilities and consume utility service; but, they are not competitors of public utilities." *Id.*; *see also Schuylkill Energy Res.*, 113 F.3d at 416-17; *Kamine/Besicorp Allegany*, 908 F. Supp. at 1203-05. *But cf. Long Lake Energy Corp. v. Niagara Mohawk Power Corp.*, 700 F. Supp. 186, 188 (S.D.N.Y. 1988).

Additionally, the primary "antitrust injury" that Hu Honua alleges from the purported loss of competition for wholesale generation of power — "consumers will be forced to pay supra-competitive prices for power as a result," FAC ¶ 152(a) — is not only speculative (depending upon an assumption, for example, that "fossil fuel costs on the Island of Hawaii could exceed $250 per

barrel by 2037 and over $300 per barrel by 2045," FAC ¶ 122) but is also largely

controlled by the Hawaii PUC. *See* HRS § 269-16(a) ("All rates, fares, charges,

classifications, schedules, rules, and practices made, charged, or observed by any

public utility or by two or more public utilities jointly shall be just and reasonable

and shall be filed with the public utilities commission."); HRS § 269-16.22 ("All

power purchase costs, including costs related to capacity, operations and

maintenance, and other costs that are incurred by an electric utility company,

arising out of power purchase agreements that have been approved by the public

utilities commission and are binding obligations on the electric utility company,

shall be allowed to be recovered by the utility from the customer base of the

electric utility company through one or more adjustable surcharges, which shall be

established by the public utilities commission."). This alleged injury "is simply

too speculative to permit relief under the antitrust laws." *City of Pittsburgh v. W.*

*Penn Power Co.*, 147 F.3d 256, 269 (3d Cir. 1998); *see also Schuylkill Energy*

*Res.*, 113 F.3d at 414 ("[W]hether and to what extent [the utility] maintains an

artificially high rate base [by favoring its own facilities] is not within the purview

of the antitrust laws," and "[d]epriving consumers of 'energy sources' is not,

however, cognizable antitrust injury.").

"[T]he Sherman Act does not attack every monopoly." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991) (citations omitted). That is, "[t]he antitrust laws tolerate both efficient monopolies and natural monopolies." *Id.* at 548 (citation omitted). "Government regulation, as opposed to treble damages and criminal liability under the Sherman Act, is generally thought to be the appropriate remedy for difficulties posed by natural monopolies." *Id.* (citations omitted). And here, Hu Honua has alleged anticompetitive behavior in a highly regulated industry. This context is important.

The court is not suggesting that PUC involvement *necessarily* immunizes any of the Defendants from antitrust laws, but "the structure of [a] regulated industry" may create a "lack of antitrust standing." *West Penn Power Co.*, 147 F.3d at 269 (acknowledging that regulated industries such as utilities are not exempt from antitrust laws under *Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973), but finding no antitrust injury in a suit challenging aspects of a merger between two electric utilities controlled by the Pennsylvania Public Utility Commission). *West Penn Power Co.* reasoned in part that "the comprehensive regulatory framework significantly restricts the nature of the competition which is permitted." *Id*. at 263.

In actuality, then — as most of the FAC alleges, *see, e.g.*, FAC ¶¶ 38-51, 58-89, 101-126, 166-184 — this is little if anything more than a breach of contract action between Hu Honua and HELCO. The fundamental dispute revolves around HELCO's alleged breach of the Hu Honua PPA by unreasonably withholding milestone-date extensions, or otherwise wrongfully terminating that contract. FAC ¶¶ 60, 65, 110-11, 168-71. "As the First Circuit has observed, '[s]ome antitrust cases are intrinsically hopeless because . . . they merely dress up in antitrust garb what is, at best, a business tort or contract violation.'" *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1087 (11th Cir. 2016) (quoting *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 69 (1st Cir. 2004)). And this is such a case.

Like *Schuylkill Energy Resources*, "[t]he fundamental dispute between [Hu Honua] and [HELCO] concerns the interpretation of the Power Purchase Agreement . . . and should be resolved pursuant to common-law contract principles," not through the antitrust laws. 113 F.3d at 418. Like *Kamine/Besicorp Allegany L.P.*, "whether [HELCO] has breached the PPA or not, [Hu Honua] has not sufficiently demonstrated an *antitrust* injury[.]" 908 F. Supp. at 1208. And like *Crossroads Cogeneration*, "[HELCO's] actions may have caused injury to plaintiff, but they did not cause injury to competition in a defined market. This is

not the sort of injury the antitrust laws were meant to prevent." 969 F. Supp. at 915.

Moreover, outside the utility context, Ninth Circuit authority is also on point — Hu Honua "has [at best] suffered a breach of contract, not an antitrust injury." *Orion Pictures Distrib. Corp. v. Syufy Enters.*, 829 F.2d 946, 949 (9th Cir. 1987) (reasoning that, where duties were fixed by "contractual commitment" prior to the alleged anticompetitive behavior, "competition was no longer a factor in determining [defendant's] obligation," such that "[plaintiff's] injury does not reflect the anticompetitive effect of [defendant's] alleged monopolization.") (internal quotation marks omitted). As NextEra points out, ECF No. 73-1, Mot. at 24, the "antitrust" damages Hu Honua seeks ("the loss of revenue and profits that would otherwise have been earned from wholesale power generation on the Island of Hawaii," "the loss of market share," loss of "invested capital in its 50% completed Facility," FAC ¶¶ 154-55) appear to be the same damages it seeks in Count Three for breach of contract. *See* FAC ¶ 172.

In short, the claim fails for lack of antitrust injury. Count One is dismissed as to NextEra.

**B.**     **Count Two (Restraint of Trade) Fails to State a Plausible Claim Under 15 U.S.C. § 1 Against Either NextEra or HEP**

Count Two seeks treble damages under 15 U.S.C. § 15(a) against all Defendants based on alleged violations of § 1 of Sherman Act, 15 U.S.C. § 1, which prohibits conspiracies "in restraint of trade or commerce." To state such a claim, "[a plaintiff] must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall*, 518 F.3d at 1047 (citation omitted). And, to reiterate, "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Id.* at 1049.

Count Two alleges, in pertinent part, that "the coordinated and collective actions of Defendants HELCO, HECO, HEI, NextEra, and HEP have had the purpose and effect of eliminating or substantially restricting competition in the market for wholesale firm power generation and raising the price of power above competitive levels by eliminating sources of less expensive power where HELCO is required to dispatch lower cost sources." FAC ¶ 159. "These

arrangements have had, and continue to have, the effect of unreasonably restraining competition in the market for wholesale firm power generation on the Island of Hawaii." *Id.* ¶ 160.

### 1. No Antitrust Injury

Count Two fails (against both NextEra and HEP) for the same primary reason that Count One fails — lack of antitrust injury (the third element reiterated in *Kendall*, a conspiracy that "actually injures competition"). *See, e.g.*, *Am. Ad Mgmt., Inc.*, 190 F.3d at 1055 (requiring antitrust injury in a § 1 action). That is, antitrust injury is required for both a § 1 claim and a § 2 claim. *See, e.g.*, *Glen Holly Entm't, Inc.*, 343 F.3d at 1007-08. Stated differently, "causal antitrust injury . . . is an element of all antitrust suits brought by private parties seeking damages under Section 4 of the Clayton Act." *Rebel Oil*, 51 F.3d at 1433 (citation omitted). The previous analysis explaining the lack of such injury for a § 2 claim applies equally to the § 1 claim here, which alleges the same "antitrust injury" as Count One, FAC ¶ 162, including "inflated prices for power, and consumers [being] forced to pay supra-competitive prices for power."

In this regard, HEP adds another persuasive reason for lack of the requisite harmful effect on competition. The FAC alleges facts indicating that the Hu Honua PPA offered *higher* prices than other "competition," and was terminated

by HELCO after Hu Honua failed to meet HELCO's demand for sufficient price reductions when seeking contract-deadline extensions. FAC ¶¶ 64, 67-71. Termination of a higher priced supplier, without more, is not antitrust injury. According to the FAC, because Hu Honua's PPA was cancelled, Hu Honua stands to lose profits of $435 million over a 20-year PPA term. FAC ¶ 165. But "the threat of loss of profits due to possible price competition following a merger does not constitute a threat of antitrust injury." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 117 (1986). And if Hu Honua did not present a "lower-cost alternative," damage from cancellation of its contract for nonperformance is not antitrust injury. *See, e.g.*, *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 977 (6th Cir. 2000) (finding no antitrust injury, reasoning in part that marketplace competitors "must at least allege that exclusion of the competitor from the marketplace results in the elimination of a superior product or a lower-cost alternative").

### 2. *A Lack of Plausibility*

Count Two is deficient for another reason as well — fundamentally, it fails to allege a plausible illegal "contract, combination, or conspiracy" to restrain trade.

a. *The § 1 claim against NextEra*

As to NextEra, Hu Honua bases its conspiracy theory on allegations that NextEra controlled the HEI Defendants after the NextEra/HEI Merger Agreement. Specifically, the FAC alleges that, after the Merger Agreement was signed, NextEra controlled HELCO's decision regarding termination of the Hu Honua PPA, and HECO's termination of three solar power projects on Oahu. *See, e.g.*, FAC ¶¶ 63, 132-34.

These allegations of control, however, are insufficient to establish a § 1 conspiracy claim as to NextEra. Hu Honua relies on the Merger Agreement itself. FAC ¶ 56; *See* Pl.'s NextEra Opp'n at 26-27; ECF No. 109 at 35-36 (arguing that "Hu Honua unquestionably connects NextEra to Defendants' scheme. . . . The Merger Agreement alone connects NextEra"). In particular, it bases the control allegation on express language in the Merger Agreement that required NextEra's "prior written consent" before HEI, HECO, or HELCO could, among other things, "(1) enter into, terminate or amend in any material respect any material Contract, [or] (2) consent to any extension or continuation or any material Contract[.]" FAC ¶ 56; NextEra Mot., Ex.A, ECF No. 73-3 at 5, 9. But that Merger Agreement also specifically *precludes* such control by NextEra. *See* ECF No. 73-3 at 10 (paragraph 5.01(c) ("No Control of [HEI's] Business. [NextEra]

acknowledges and agrees that (i) nothing contained in this Agreement is intended to give [NextEra], directly or indirectly, the right to control or direct the operations of [HEI] or an [HEI] Subsidiary prior to the Effective Time and . . . prior to the Effective Time, [HEI] shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision over its and [HEI's] Subsidiaries' respective operations.").  And the FAC fails to allege *facts* indicating that NextEra violated that preclusive language.[16]

Moreover, NextEra could not have withheld consent to HELCO's actions without good reason because, under § 5.01(a), NextEra's prior written consent "shall not be unreasonably withheld, conditioned or delayed."  ECF No. 73-3 at 5.  Rather than establishing unbridled control by NextEra (and its joinder in an illegal conspiracy), the contract itself establishes no more than NextEra's routine consent in *HELCO's* decision.  That is, the FAC "just as easily suggests rational, legal business behavior" by NextEra, rather than an illegal conspiracy to restrain trade.  *See Kendall*, 518 F.3d at 1049 ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could

---

[16] NextEra explains that these types of material-change provisions (which prevent a company from making significant changes to material contracts during the pendency of a merger) are standard terms which protect the parties' legitimate interests in a pre-merger context. *See* NextEra Mot. at 16-17, ECF No. 73-1.

suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").

The FAC's allegations of control by NextEra also lack plausibility given the "obvious alternative explanation" in the FAC that HELCO cancelled the Hu Honua PPA because of Hu Honua's own nonperformance. *See Eclectic Props. E., LLC*, 751 F.3d at 996 (requiring a court to consider an "obvious alternative explanation," when assessing plausibility). The FAC itself details such obvious reasons for HELCO's termination. FAC ¶ 51. Specifically, "[d]uring the construction [of its facility], disputes arose with the Facility construction contractor that became insoluble." *Id.* Hu Honua became involved in extensive litigation with its contractor and vendors, and a separate labor union dispute. *Id.* "[T]he construction contract and labor disputes, together with corresponding financing interruptions, caused an extended loss of time and delayed the completion of construction of the Hu Honua facility[.]" *Id.* "Hu Honua's disputes with its former construction contractor and the labor union jurisdiction dispute caused an irretrievable loss of time in the construction of the Hu Honua Facility. As a result, Hu Honua realized that it would not be able to achieve two milestone[] dates set forth in the PPA[.]" FAC ¶ 58.

Also unavailing is Hu Honua's argument that the FAC's allegations are sufficient under *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). *Starr* held that "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.* at 1216 (emphasis added). Although Hu Honua's theories are not impossible (at least at this stage of the litigation), they are not *plausible*, which is what *Twombly/Iqbal* requires. *See, e.g.*, *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (distinguishing *Starr* because "[h]ere, [unlike in *Starr*,] plaintiffs' explanation is merely *possible* rather than plausible. To render their explanation plausible, plaintiffs must do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation.") (citing *Iqbal*, 556 U.S. at 678); *Eclectic Props E., LLC*, 751 F.3d at 997 ("Applying *Twombly*, *Iqbal*, *Starr*, and *Century* . . . Plaintiffs have not made the kind of factual allegations that 'nudg[e] their claims across the line from conceivable to plausible.'") (citing *Twombly*, 550 U.S. at 570)).

b.      *The § 1 claim against HEP*

Similarly, the FAC lacks a plausible conspiracy theory as to HEP. The FAC alleges that "[a]s early as 2012, HEP recognized that the proposed Hu

41

Honua facility was a direct competitive threat" and that "as the operator of the largest power plant on [Hawaii] Island . . . [HEP] attempted unsuccessfully to exclude Hu Honua as a competitor in the power generation market [when HELCO applied to the PUC for the approval of the original Hu Honua PPA in 2012]."  FAC ¶ 99.  "Hu Honua is informed and believes, and on that basis alleges, that HEP participated in and supported the termination of Hu Honua's PPA [in 2015.]"  *Id.* But this allegation is deficient as it offers no facts indicating what HEP might have done to "participate[] in and support[] the termination."  *See Kendall*, 518 F.3d at 1047 ("[T]o allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin.") (quoting *Twombly*, 550 U.S. at 565 n.10).

What's more, the FAC also alleges — in support of its monopolization claim against HELCO — that in 2015 HELCO and HEP agreed for HELCO to acquire HEP's fossil fuel plant for some $88 million.  FAC ¶¶ 91-97.  That is, HEP was *exiting* the very wholesale power market from which it allegedly sought to eliminate Hu Honua.  Whatever these allegations might mean as to HELCO, they are inconsistent as to *HEP's* participation in a conspiracy to restrain trade as to Hu Honua.  As HEP argues, "HEP's decision to sell [its]

Hamakua Facility in 2015 and exit the relevant market removes any economic incentive for HEP to conspire to terminate the Hu Honua PPA [in 2016.]" HEP Opp'n at 20, ECF No. 95-1 at 27. That is, the FAC's conspiracy theory as to HEP makes no "economic sense." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) ("Antitrust claims must make economic sense") (citing *Eastman Kodak Co. v. Image Tech. Servs. Inc.*, 504 U.S. 451, 468 (1992)).

In response, Hu Honua offers an implausible explanation that is not pled in the FAC. It claims that HEP wanted to remove Hu Honua from the wholesale firm power market so that HEP's power plant would become more valuable when selling it. Opp'n at 12-13, ECF No. 108 at 20-21. But nothing in the FAC indicates HEP knew, when it entered into the agreement for HELCO to acquire HEP's facility (in 2015), that HELCO would later (in 2016) terminate the Hu Honua PPA. And, even assuming HEP would want to increase its facility's selling price, why would HELCO be part of that conspiracy to pay more for HEP's facility? Again, the theory makes no economic sense. *See Adaptive Power Sols., LLC,* 141 F.3d at 952.

And, as with the § 1 claim as to NextEra, the claim as to HEP lacks plausibility when considering the "obvious alternative explanation" pled in the

FAC that HELCO terminated the Hu Honua PPA for lack of performance by Hu Honua, and Hu Honua's subsequent refusal to meet HELCO's terms in renegotiating the PPA. *See Eclectic Props. E., LLC*, 751 F.3d at 996. Whether or not the FAC adequately alleges that HELCO breached the PPA in unreasonably refusing to approve Hu Honua's requests to extend milestones, there is no plausible antitrust conspiracy theory pled as to HEP. There are no facts in the FAC suggesting that HEP's decision to sell to HELCO was anything but a rational business decision. *See Kendall*, 518 F.3d at 1049.[17]

## C.      State Law Counts Against NextEra and HEP

Count Seven asserts state-law antitrust or unfair competition claims against all Defendants under HRS chapter 480. Similarly, Count Eight asserts a state-law claim for Tortious Interference with Contract against NextEra. But because the court has dismissed the federal antitrust claims as to NextEra and HEP (and the suit was not based on diversity jurisdiction), the court intends to dismiss both of the state-law claims without prejudice under 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) [regarding Article III jurisdiction] if — . . . the district court has

---

[17] Given that Count Two fails as to HEP for lack of antitrust injury and lack of a plausible conspiracy theory, the court need not reach HEP's alternative argument that its acts are shielded from antitrust scrutiny by the *Noerr-Pennington* or State Action Doctrines.

dismissed all claims over which it has original jurisdiction[.]").  *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").[18]

But it is premature to dismiss these state-law claims because, under the present procedural posture (where all claims as to the Hawaiian Electric Defendants have been held in abeyance), the Hawaiian Electric Defendants still remain in the action with federal claims against them.  That is, the court cannot exercise its discretion under § 1367(c) until it "has dismissed all claims over which it has original jurisdiction."  Accordingly, the court DEFERS ruling on Counts Seven and Eight until the conditional settlement as to the Hawaiian Electric Defendants is completely finalized.  For administrative purposes, the court DENIES — without prejudice — NextEra's and HEP's Motions to Dismiss as to Counts Seven and Eight.

---

[18] It is unlikely that the chapter 480 antitrust claims could otherwise survive.  *See* HRS § 480-3 ("This chapter shall be construed in accordance with judicial interpretations of similar federal antitrust statutes[.]"); *Int'l Healthcare Mgmt. v. Haw. Coalition for Health*, 332 F.3d 600, 609 (9th Cir. 2003) ("[Plaintiff's] state antitrust claims fail for the same reasons as their federal claims because Hawaii antitrust statutes are interpreted 'in accordance with judicial interpretations of similar federal antitrust statutes.'") (quoting HRS § 480-3).  Nevertheless, the court has not fully analyzed the state-law allegations to determine whether the FAC states a claim under chapter 480.

# V. **CONCLUSION**

Hu Honua's federal antitrust claims lack plausibility as to both NextEra and HEP. The Motions to Dismiss are GRANTED as to Counts One and Two, and those claims are DISMISSED without prejudice. Because the court DEFERS ruling on the state-law claims, the Motions as to Counts Seven and Eight are DENIED without prejudice. The court will allow Hu Honua an opportunity to file a Second Amended Complaint that cures the FAC's deficiencies, if it believes it can do so. *See Lopez*, 203 F.3d at 1130. A Second Amended Complaint (or a statement indicating that a Second Amended Complaint will not be filed) is due by **January 29, 2018**.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 19, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Hu Honua Bioenergy, LLC v. Hawaiian Electric Industries, Inc., et al.*, Civ. No. 16-00634 JMS-KJM, Amended Order Granting In Part Defendants Nextera Energy, Inc.'s and Hamakua Energy Partners, L.P.'s Motions to Dismiss, ECF Nos. 73 & 95, With Leave to Amend