IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HU HONUA BIOENERGY, LLC, a Delaware Limited Liability Company,<br><br>                    Plaintiff,<br><br>     vs.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., a Hawaii Corporation; HAWAIIAN ELECTRIC COMPANY, a Hawaii Corporation; HAWAII ELECTRIC LIGHT COMPANY, INC., a Hawaii Corporation; NEXTERA ENERGY, INC., a Florida Corporation; and HAMAKUA ENERGY PARTNERS, L.P., a Hawaii Limited Partnership,<br><br>                    Defendants. | Civ. No. 16-00634 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT NEXTERA ENERGY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 148 |

## ORDER GRANTING IN PART AND DENYING WITHOUT PREJUDICE IN PART DEFENDANT NEXTERA ENERGY, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT, ECF NO. 148

## I. INTRODUCTION

Defendant NextEra Energy, Inc. ("NextEra") moves to dismiss the

Second Amended Complaint ("SAC") in this antitrust and breach-of-contract

action arising out of the cancellation of Plaintiff Hu Honua Bioenergy, LLC's

1

("Plaintiff" or "Hu Honua") power purchase agreement ("PPA") with co-Defendant Hawaii Electric Light Company, Inc. ("HELCO"). HELCO had agreed to purchase wholesale power from Hu Honua, which was building an independent power plant run on biomass on the Big Island of Hawaii. HELCO cancelled the PPA, allegedly as part of an illegal antitrust conspiracy with NextEra and others, after problems arose with Hu Honua's construction of the power plant (although HELCO and Hu Honua have since renegotiated the PPA).

Hu Honua filed the SAC after the court's January 19, 2018 Amended Order (the "January 19th Order"), which granted in part motions by NextEra and former co-Defendant Hamakua Energy Partners, L.P. ("HEP") to dismiss the First Amended Complaint ("FAC").[1] *See* ECF No. 137; *Hu Honua Bioenergy, LLC v. Hawaiian Electric Indus., Inc.*, 2018 WL 491780 (D. Haw. Jan. 19, 2018). The January 19th Order, among other matters, dismissed federal antitrust claims — two

---

[1] On July 8, 2018, Hu Honua and HEP entered into a binding settlement, *see* ECF No. 179, and Hu Honua dismissed claims against HEP with prejudice, *see* ECF No. 177. Although HEP had filed its own motion to dismiss the SAC, it withdrew that motion and others in conjunction with the settlement, *see* ECF Nos. 174, 175. This Order thus focuses solely on NextEra's motion.

Similarly, Hu Honua and co-Defendants Hawaiian Electric Industries ("HEI"), Hawaiian Electric Company ("HECO") and HELCO (collectively, "the Hawaiian Electric Defendants") previously reached a settlement in May 2017 in conjunction with a renegotiated PPA, as Hu Honua completes construction of its power plant. *See* ECF Nos. 88, 122. Consummation of the settlement with the Hawaiian Electric Defendants is still awaiting final completion of the approval process involving the Hawaii Public Utilities Commission ("PUC") and a related state court appeal, *Life of the Land v. Public Utilities Comm'n, et al.*, App. No. SCOT-17-0000630 (Haw. Sup. Ct.).

counts alleging violations of sections 1 and 2 of the Sherman Antitrust Act, 15

U.S.C. §§ 1 & 2 — against NextEra and HEP, with leave to amend to attempt to

rectify the identified deficiencies.  Accordingly, Hu Honua filed the SAC on

January 29, 2018.  ECF No. 138.  On March 13, 2018, NextEra moved to dismiss

those realleged claims with prejudice.  ECF No. 148.  Hu Honua filed an

Opposition on April 13, 2018, and NextEra filed its Reply on April 27, 2018.  ECF

Nos. 156, 157.  The court heard the Motion on July 9, 2018.  ECF No. 180.  Based

on the following, NextEra's Motion is GRANTED as to the federal claims.  It is

DENIED without prejudice as to the state claims — claims over which the court

intends to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3).

## II.  DISCUSSION

The January 19th Order comprehensively set forth the factual and

legal background of this complicated action involving Hawaii's electric utility

market, NextEra's proposed 2014 merger with HECO, HELCO's 2015 termination

(and subsequent renegotiation) of the PPA, and HELCO's proposed purchase of a

HEP facility.  The instant Order does not repeat that background, and the court

presumes a detailed familiarity with its prior Order.  The court discusses new

allegations in the SAC only as necessary to address NextEra's present motion, and

otherwise relies on the January 19th Order for the context. The court proceeds directly to NextEra's arguments.

## A.  Count One — Conspiracy to Monopolize

Count One of the SAC realleges a claim for conspiracy to monopolize under 15 U.S.C. § 2, which makes it illegal for someone to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States[.]"[2]  "To

---

[2]  The court only considered Count One of the FAC as to NextEra as a claim for conspiracy to monopolize. *See Hu Honua Bioenergy*, 2018 WL 491780, at *8.  To the extent the FAC asserted claims for monopolization and attempted monopolization (as opposed to *conspiracy* to monopolize), the court dismissed those claims with prejudice for two reasons. First, NextEra (a Florida utility) was never a competitor with Hu Honua in the relevant market (the Big Island).  *See, e.g.*, *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1131 (9th Cir. 2015); *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004).  And second, Hu Honua conceded that it was only asserting a conspiracy-based claim.  *See Hu Honua Bioenergy*, 2018 WL 491780, at *8 (citing ECF No. 109, Pl.'s Opp'n at 34-35 n.8).  The SAC again appears to plead monopolization and attempted monopolization claims, and the claims are again dismissed with prejudice for the same reasons stated in the January 19th Order.  Hu Honua need not have repleaded those claims if it was seeking to preserve them for appeal.  *See, e.g.*, *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal.").

In this regard, NextEra points to cases indicating that a *conspiracy* to monopolize claim also fails if the defendant was not a competitor in the relevant market.  *See, e.g.*, *Portney v. CIBA Vision Corp.*, 593 F. Supp. 2d 1120, 1128 (C.D. Cal. 2008) ("It is axiomatic in antitrust law that a defendant may not be found liable for monopolizing or attempting *or conspiring* to monopolize a market unless that defendant is a competitor in the relevant market and his conduct creates a dangerous probability that he will gain a dominant share of the market.") (quoting *Transphase Sys. v. S. Cal. Edison Co.*, 839 F. Supp. 711, 717 (C.D. Cal. 1993) (emphasis added)).  But other authority disagrees, reasoning that in some circumstances a non-competitor can conspire to monopolize a market.  *See Spanish Broad. Sys.*, 376 F.3d at 1078 n.10 ("Nothing in our case law suggests that a conspiracy [to monopolize] must be limited solely to market participants so long

(continued . . .)

prove a conspiracy to monopolize in violation of § 2, [a plaintiff] must show four elements: (1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) (citation omitted).

The January 19th Order dismissed the conspiracy to monopolize claim (the FAC's Count One) for two primary reasons:  (1) a lack of plausible factual allegations of a "specific intent to monopolize" the market for wholesale firm power generation on the Big Island; and (2) a lack of "causal antitrust injury." *Hu Honua Bioenergy*, 2018 WL 491780, at *8-9.  Relatedly, the court also dismissed the FAC's Count Two, alleging conspiracy to restrain trade in violation of 15 U.S.C. § 1 because the FAC did not plausibly allege an illegal conspiracy, *id.* at *14-15 — and that reasoning was also sufficient to dismiss Count One for conspiracy to monopolize as well.  *See, e.g.*, *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1576 (11th Cir. 1991) ("[A] section 1 claim and a section 2 conspiracy to monopolize claim require the same threshold showing — the existence of an agreement to restrain trade."); IIIB Philip E. Areeda & Herbert

(. . . continued)
as the conspiracy also involves a market participant and the non-participant has an incentive to join the conspiracy.") (citation omitted).  Because Hu Honua's conspiracy to monopolize claim fails for several other reasons, the court need not decide whether it also fails on this ground.

Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 809 (4th ed. 2015) (hereinafter "Areeda & Hovenkamp") ("Any arrangement that could be considered a 'conspiracy' to monopolize [under § 2] must necessarily also be an unreasonable 'contract,' 'combination,' or 'conspiracy' in restraint of trade offending § 1.").

The SAC's conspiracy to monopolize claim fails for the same fundamental reasons. That is, the SAC has not cured the FAC's deficiencies.

### 1. *An Implausible Conspiracy*

Initially, the SAC still alleges an implausible illegal antitrust conspiracy. Despite the SAC's amendments, two crucial facts remain that are inconsistent with Hu Honua's antitrust theory: Hu Honua's own failure to complete its power plant under the PPA's terms; and the NextEra/HEI Merger Agreement's prohibition of NextEra's "control" of decisions like HELCO's cancellation of the PPA or proposed purchase of HEP's power plant.

### a. *Hu Honua's Initial Breach of the PPA*

The fact that Hu Honua failed to complete its power plant under the PPA's terms provides an "obvious alternative explanation" (i.e., besides an illegal conspiracy) for HELCO's cancellation of the PPA. *See, e.g.*, *Eclectic Props. E., LLC*, 751 F.3d 990, 996 (9th Cir. 2014) ("When considering plausibility, courts

must also consider an 'obvious alternative explanation,' for defendant's behavior.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) ("[I]t was not suggestive of conspiracy . . . [where] we have an obvious alternative explanation.").  The SAC continues to acknowledge that Hu Honua was unable to complete its biomass power plant as required by the express terms of the PPA.  As with the FAC, the SAC explains that labor disputes, financing problems, and litigation with its construction contractors — all completely independent of NextEra, and its proposed merger with HECO — "caused an extended loss of time and delayed the completion of construction of the Hu Honua Facility, setting in motion the chain of events leading to this Complaint."  SAC ¶ 75.  These events "caused an irretrievable loss of time in the construction of the Hu Honua Facility," such that Hu Honua "would not be able to achieve two milestone[] dates set forth in the PPA."  *Id.* ¶ 126.  Thus, rather than inferring an illegal antitrust conspiracy from the timing of the proposed merger, the SAC itself explains the obvious alternative explanation for HELCO's termination of the PPA — Hu Honua's own nonperformance — rendering Hu Honua's conspiracy allegations implausible.  *Twombly*, 550 U.S. at 567.

And (as also explained in the January 19th Order) if HELCO unreasonably refused to extend milestone construction dates in accordance with the

PPA, this might form the basis for a breach of contract claim against the Hawaiian Electric Defendants, but not for an antitrust conspiracy claim. *See, e.g.*, *Schuylkill Energy Res., Inc. v. Penn. Power & Light Co.*, 113 F.3d 405, 418 (3d Cir. 1997) ("The fundamental dispute . . . concerns the interpretation of the Power Purchase Agreement. This dispute should be resolved pursuant to common-law contract principles" not through antitrust laws); *Orion Pictures Distrib. Corp. v. Syufy Enters.*, 829 F.2d 946, 949 (9th Cir. 1987) ("Orion has suffered a breach of contract, not an antitrust injury.").

      *b.*  *The Merger Agreement's Consent Provisions*

    Second, as with the FAC, the consent provisions of the NextEra/HEI Merger Agreement (whereby HELCO/HECO needed NextEra's prior consent before "enter[ing] into, terminat[ing] or amend[ing] in any material respect any material Contract," SAC ¶ 84) cannot alone constitute the necessary "combination or conspiracy" to monopolize. *Paladin Assocs., Inc.*, 328 F.3d at 1158. This is because the Merger Agreement also provides that such consent "shall not be unreasonably withheld, conditioned or delayed," ECF No. 73-3 at 5, Merger Agreement at 38, and it specifies:

> <u>No Control of [HEI's] Business</u>. [NextEra]
> acknowledges and agrees that (i) nothing contained in
> this Agreement is intended to give [NextEra], directly or
> indirectly, the right to control or direct the operations of

> [HEI] or an [HEI] Subsidiary prior to the Effective Time and . . . prior to the Effective Time, [HEI] shall exercise, consistent with the terms and conditions of this Agreement, complete control and supervision over its and [HEI's] Subsidiaries' respective operations.

ECF No. 73-3 at 10, Merger Agreement at 43. That is, the Merger Agreement itself precludes control, and so — without more — it cannot form the basis of an illegal agreement in violation of antitrust laws.

> It remains true, as the court previously explained, that:

> Rather than establishing unbridled control by NextEra (and its joinder in an illegal conspiracy), the [Merger Agreement] itself establishes no more than NextEra's routine consent in *HELCO's* decision. That is, the [SAC] "just as easily suggests rational, legal business behavior" by NextEra, rather than an illegal conspiracy to restrain trade. *See Kendall* [*v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008)] ("Allegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws.").

*Hu Honua Bioenergy*, 2018 WL 491780, at *14. *See also Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015).

### 2.    *No Specific Intent to Monopolize*

Moreover, even accepting that NextEra and the Hawaiian Electric Defendants had some sort of an agreement regarding termination of the PPA, the

SAC still fails to allege plausibly that NextEra had the "specific intent to monopolize" such that an agreement could have been part of an illegal antitrust conspiracy. *See Paladin Assocs., Inc.*, 328 F.3d at 1158 ("To prove a conspiracy to monopolize in violation of § 2, [a plaintiff] must show . . . the specific intent to monopolize").

      As to the FAC, Hu Honua argued that HECO terminated other independent power purchase agreements on Oahu (in the same time frame that HELCO terminated the Hu Honua PPA and sought to acquire HEP's facility on the Big Island) as part of a larger strategy — shared with NextEra — to plan for liquid natural gas sources of power after the proposed merger. The January 19th Order concluded, however, that such a common motive to increase profits did not indicate that NextEra had a "specific intent to monopolize" the wholesale power market on the Big Island. *See Hu Honua Bioenergy*, 2018 WL 491780, at *9 ("[T]here are no facts pled that would suggest *NextEra* specifically intended to monopolize that market[] merely by consenting to HELCO's termination of the Hu Honua PPA.") (citing *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421 (9th Cir. 1995), and *Syufy Enters. v. Am. Multicinema, Inc.*, 793 F.2d 990 (9th Cir. 1986)). This court reasoned that "[i]t is not enough to show that [a defendant] merely agreed to go along." *Id.* (quoting *Rebel Oil Co.*, 51 F.3d at 1438 n.8). "[I]t is not

enough to suggest — as Hu Honua does — that NextEra shared a motive to increase prices or profits with a similar strategy." *Id.* (citation omitted). "Motivation to enter a conspiracy is never enough to establish a traditional conspiracy." *Id.* (quoting VI Areeda & Hovenkamp ¶ 1411 (4th ed. 2017)).

The SAC adds further allegations detailing HEI's liquid natural gas strategy, purportedly in conjunction with the proposed merger and at the direction of NextEra. *See, e.g.*, SAC ¶¶ 87, 88, 92, 94, 99, 103, 105, 107, 117, 119, 120, 122. But, as NextEra argues, these allegations continue to relate to other markets (Oahu), other products (liquid natural gas), and are largely directed at other Defendants (the Hawaiian Electric Defendants). And although these new allegations, like those in the FAC, might further indicate a motivation for why NextEra would agree to actions of HELCO (cancellation of the PPA, purchase of HEP's facility) during the relevant time period, they still do not indicate a specific intent on NextEra's part to monopolize the wholesale power market on the Big Island. Again, motivation is not enough. *Rebel Oil Co.*, 51 F.3d at 1438 n.8; *Hu Honua Bioenergy, LLC*, 2018 WL 491780, at *9.

There is nothing inherently wrong (at least for the alleged antitrust purposes) with this alleged liquid natural gas strategy. It is a legitimate business purpose. And it is well-settled that,

> [i]n proving specific intent, a mere intention to prevail over rivals or improve market position is insufficient. Even an intent to perform acts that can be objectively viewed as tending toward the acquisition of monopoly power is insufficient, unless it also appears that the acts were not "predominantly motivated by legitimate business aims."

*Pa. Dental Ass'n v. Med. Serv. Ass'n of Pa.*, 745 F.2d 248, 260-61 (3d Cir. 1984) (quoting *Times Picayune Publ'g Co. v. United States*, 345 U.S. 594, 627 (1953)). "[T]he mere intention to exclude competition and to expand one's own business is not sufficient to show a specific intent to monopolize." *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 541 (7th Cir. 1986).

### 3. *No Antitrust Injury*

The SAC's conspiracy to monopolize claim also fails for an independent reason — the lack of the required "causal antitrust injury." *Paladin Assoc., Inc.*, 328 F.3d at 1158. This element is directed towards injury to "competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). "[A]ntitrust laws protect the process of competition, and not the pursuits of any particular competitor[.]" *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 901 (9th Cir. 2008).

The January 19th Order concluded that the FAC did not establish harm to competition for two primary reasons: First, as the FAC acknowledged, Hu Honua's proposed biomass power plant is a "qualifying facility" ("QF") under the federal Public Utility Regulatory Policies Act ("PURPA") (codified in part at 16 U.S.C. §§ 2601 *et seq.*), and such QFs are entitled to receive special rate and regulatory treatment. *Hu Honua Bioenergy, LLC*, 2018 WL 491780, at *9. And second, the alleged injury — consumers being forced to pay supra-competitive prices for power — was both speculative and controlled by the PUC. *Id.* at *11. Both reasons remain.

      *a.*     *Qualifying Facility Under PURPA*

Like the FAC, the SAC alleges that "[t]he Hu Honua facility is a QF because it is a generating facility of 80 MW or less whose primary energy source is biomass, and [Hu Honua] has filed with the Federal Energy Regulatory Commission a notice of self-certification." SAC ¶ 45. As the January 19th Order explained, under PURPA, "Congress has sought to encourage the development of qualifying facilities by insulating them from competition." *Hu Honua Bioenergy, LLC*, 2018 WL 491780, at *10 (quoting *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1373 (N.D. Ga. 1986)). "PURPA was created as a vehicle to reduce the nation's dependency on foreign oil and to conserve energy, not to

foster competition." *Kamine/Besicorp Allegany L.P. v. Rochester Gas & Elec. Corp.*, 908 F. Supp. 1194, 1204 (W.D.N.Y. 1995). In particular, PURPA and its implementing regulations (both federal and state) guarantee prices and markets. *See, e.g.*, *Greensboro Lumber Co.*, 643 F. Supp. at 1373 ("[I]n the wholesale market, PURPA establishes a guaranteed price which is equal to, or greater than, the price that would be received in a competitive market. In addition to providing a guaranteed price to qualifying facilities, PURPA also provides a guaranteed market for the power generated by qualifying facilities by making it a requirement that utilities purchase available energy and capacity from qualifying facilities before buying power from anywhere else[.]").[3]

As such, case law uniformly holds that PURPA power producers do not harm competition under antitrust laws, even if they might otherwise illegally harm competitors. *See, e.g.*, *Schuylkill Energy*, 113 F.3d at 415 (finding no antitrust injury because, under PURPA's regime, "state and federal laws prohibit

---

[3] "[S]ection 210(a) of PURPA directed the Federal Energy Regulatory Commission ('FERC') to promulgate rules mandating that electric utilities purchase energy from QFs." *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 67 (1st Cir. 2017) (citing 16 U.S.C. § 824a-3(a)). "In accordance with this directive, FERC promulgated regulations requiring utilities to purchase electricity from QFs 'at a rate equal to the utility's full avoided cost.'" *Id.* (citations omitted). "Crucially, given section 210's purpose, the avoided cost rate 'usually exceeds the market price for wholesale power.' Additionally, section 210(f) of PURPA instructs state regulatory authorities to implement these FERC rules." *Id.* (quoting *Portland Gen.Elec. Co. v. FERC*, 854 F.3d 692, 695 (D.C. Cir. 2017) (other citations omitted)).

[plaintiff] from competing in the relevant market"); *Kamine/Besicorp Allegany L.P.*, 908 F. Supp. at 1207 (finding no antitrust injury at a preliminary injunction stage, reasoning in part that "[t]he PPA, which [PURPA-producer] Kamine is attempting to enforce, was not created as a result of market forces or a competitive process; it is a creature of a statutory scheme [(PURPA)] set up for reasons that have nothing to do with competition *per se*"); *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 969 F. Supp. 907, 915 (D.N.J. 1997) (finding no antitrust injury in action brought by PURPA power producer, reasoning that "Defendant's actions may have caused injury to plaintiff, but they did not cause injury to competition in a defined market [and was] not the sort of injury the antitrust laws were meant to prevent"), *rev'd on other grounds*, 159 F.3d 129 (3d Cir. 1998).

      The SAC does not cure the failure to allege plausible antitrust injury (injury to competition in the relevant market). To be sure, the SAC adds several paragraphs of allegations regarding QFs under PURPA, claiming that Hu Honua actually "competed" in the wholesale market for firm power. *See* SAC ¶¶ 44 to 53. It alleges that:

> Under federal law, there are two primary ways that a QF can sell power to a utility: (a) through a contract obtained under the PURPA "mandatory buy" rule, or (b) through an otherwise-negotiated contract. The "mandatory buy"

rule requires utilities to purchase power from QFs at rates that are "just and reasonable" and that "do not discriminate against [QFs]." A rate satisfies these requirements if it is equivalent to the utility's avoided costs.

*Id.* ¶ 46. "Alternatively, a QF is free to enter into a contract to sell power to a utility at a negotiated rate." *Id.* ¶ 47 (citing 18 C.F.R. § 292.301).

Hu Honua elected to enter into a negotiated rate contract with HELCO. Thus, the PPA between HELCO and Hu Honua is not a PURPA contract. Instead, it is a contract whose terms, including its price term, were negotiated between the parties.

*Id.* ¶ 48.

The PPA was never submitted to the [PUC] as a PURPA avoided cost contract. Rather, HELCO submitted the PPA to the [PUC] as a contract with freely-negotiated energy prices. In approving the PPA as a negotiated rate contract, which provided stable prices to consumers over the long term, the [PUC] emphasized that Hu Honua's PPA was "de-linked" from fossil fuel prices.

*Id.* ¶ 49.

Because Hu Honua chose to compete against other potential generators, and did not seek a PURPA contract, it is situated differently from other QFs that have mandated contracts. In order to obtain the PPA, Hu Honua had to demonstrate that the benefits of its facility exceeded those of facilities owned by other potential market players and entrants, including HELCO. In entering into a freely-negotiated contract with HELCO, Hu Honua was entering into competition against the

> utility as a wholesale energy generator, and not simply
> functioning as a supplier.

*Id.* ¶ 50.  Hu Honua thus argues that its PPA was competition in the wholesale

power market, and thus HELCO's termination of its PPA (as part of an allegedly

illegal conspiracy with NextEra and HEP) constituted antitrust injury.  It relies

fundamentally on its allegation that because it "elected to enter into a negotiated

rate contract with HELCO . . . the PPA between HELCO and Hu Honua is not a

PURPA contract," *id.* ¶ 48, and thus it was "entering into competition against

[HELCO] as a wholesale energy generator," *id.* ¶ 50.

   Notably, however, the allegation that Hu Honua suffered antitrust

injury, *see, e.g.*, SAC ¶ ¶ 234, 244, is a legal conclusion which is not entitled to a

presumption of truthfulness.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court

must accept as true all of the allegations contained in the complaint is inapplicable

to legal conclusions."); *Schuylkill Energy*, 113 F.3d at 417 ("We are not, however,

required to accept as true unsupported conclusions and unwarranted inferences. . . .

While [plaintiff] alleges in its Amended Complaint that it is [defendant's]

competitor in the retail and wholesale markets, those assertions are belied by both

the remaining factual allegations and the law.").

   And ultimately, in this context, the SAC's new allegations of

"competition" make no difference.  This is because, even if Hu Honua's PPA was

an "otherwise-negotiated contract," it was done so under the auspices of PURPA. Even if the PPA was not a contract based on PURPA's "mandatory buy" rates, it is undisputed that, as the SAC continues to allege, Hu Honua's proposed biomass power plant *was* (and still is) a QF under PURPA, with self-certification obtained with the FERC. *See* SAC ¶ 45. Even if the status might have been formally obtained after negotiations had ensued, *id.* ¶ 89, the status (or potential status) brings with it leverage and negotiating options. The PPA was thus negotiated in light of a guaranteed market with PURPA's "mandatory buy" and "avoided cost" provisions as benchmarks, and brings with it all of PURPA's rights and remedies as part of the picture. *See, e.g.*, *Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 850 (9th Cir. 1994) ("Section 210 of PURPA specifies the benefits to which QFs are entitled. It creates a market for their energy by requiring that the [FERC] establish regulations that obligate public utilities to sell electric energy to and purchase electric service from QFs."); *SPower Dev. Co., LLC v. Colo. Pub. Utils. Comm'n*, 2018 WL 1014142, at *7 (D. Colo. Feb. 22, 2018) ("'[A] QF has the unconditional right' to choose to sell its output to an electric utility and, in exercising that right, may contract with the utility or force the utility to accept its output through a legally enforceable obligation approved by

state authorities.") (citing *In re Hydrodynamics, Inc.*, 146 FERC ¶ 61193, 61844 (Mar. 20, 2014)).

Indeed, HELCO actually sought approval of the PPA from the PUC based upon Hawaii's PURPA provisions, among other standards.[4] *See* ECF Nos. 95-7 at 4 & 147-9 at 4, PPA application at 3 (seeking PUC approval pursuant to HRS § 269.27.2 and Hawaii Administrative Rules ("HAR") Chapter 6-74). The PPA application indicated that rates, among other criteria, shall "(1) Be just and reasonable to the electric consumer of the electric utility and in the public interest; (2) Not discriminate against qualifying cogeneration and small power production facilities; and (3) Be not less than one hundred per cent of avoided cost for energy and capacity purchases to be determined as provided in [HAR §] 6-74-23 from qualifying facilities and not less than the minimum purchase rate."[5] *Id.* at 5, PPA Application at 4.

---

[4] "[A] Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001)). Moreover, the court can review the PPA application under the incorporation-by-reference doctrine because the SAC refers extensively to the application (*see, e.g.*, SAC ¶¶ 65 to 67). *See Khoja*, 899 F.3d at 1002 ("[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'") (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

[5] HAR Chapter 6-74, entitled "Standards for Small Power Production and Cogeneration," among other things, (1) defines qualifying facilities under FERC's PURPA regulations, 18 C.F.R. Part 292, *see* HAR § 6-74-1; and (2) implements "arrangements between

(continued . . .)

The PPA application quoted criteria for rates from HAR § 6-74-22(a),

which, in turn, is nearly identical to that required by PURPA, as set forth in 16

U.S.C. § 824a-3(b):

> The rules prescribed under subsection (a) shall insure
> that, in requiring any electric utility to offer to purchase
> electric energy from any qualifying cogeneration facility
> or qualifying small power production facility, the rates
> for such purchase —
>
> (1) shall be just and reasonable to the electric consumers
> of the electric utility and in the public interest, and
> (2) shall not discriminate against qualifying cogenerators
> or qualifying small power producers.
>
> No such rule prescribed under subsection (a) shall
> provide for a rate which exceeds the incremental cost to
> the electric utility of alternative electric energy.

Although the application later acknowledged that a utility's avoided costs were not

determinative in evaluating the PPA's rates, the application specifically advocated

for an assessment of "avoided costs" as a "useful benchmark in assessing the

reasonableness of an [independent power producer's] pricing."  ECF No. 95-8 at

---

(. . . continued)
electric utilities and [QFs] under Section 210 of [PURPA], 16 U.S.C. § 824A-3," *see* HAR §§ 6-74-15 to -28.  This Chapter thus executes FERC's mandate to Hawaii (as with all other states) to implement FERC's rules requiring utilities to purchase electricity from QFs "at a rate equal to the utility's full avoided cost," *Allco Renewable Energy Ltd.*, 875 F.3d at 67 (citations omitted), where "section 210(f) of PURPA instructs state regulatory authorities to implement these FERC rules." *Id.* (citations omitted)).

58.  That is, the PPA was actually submitted, at least in significant part, under auspices of PURPA.

Moreover, as NextEra argues, merely because a QF's PPA was negotiated does not mean it was done so in a competitive market for purposes of assessing potential antitrust injury.  *See Greensboro Lumber*, 643 F. Supp. at 1355-56 (finding a lack of antitrust injury/standing regarding a PPA that was the product of extensive negotiations between a QF and utilities and that resulted in pricing "significantly less" than a utility's avoided costs); *Kamine/Besicorp Allegany*, 908 F. Supp. at 1207 (finding no antitrust injury in a dispute involving a negotiated PPA with prices allegedly in excess of a utility's avoided costs).  Indeed, if those negotiations between Hu Honua and HELCO had failed, Hawaii's PURPA regulations allowed the parties to seek PUC intervention to resolve their differences.  *See* HAR §§ 6-74-15(c) & (e).[6]

---

[6]  HAR § 6-75-15(c) provides:

> If the electric utility and qualifying facility fail to reach an agreement on the rate or terms of purchase within seventy-five days after the qualifying facility first offers to sell energy or capacity to the electric utility, the electric utility, within fourteen days, shall submit a petition to the commission requesting a hearing on the matter.  If the electric utility fails to submit the petition within the prescribed time period, the qualifying facility may petition the commission for a hearing on the matter.  Upon the application of the electric utility or the qualifying facility and for

(continued . . .)

In sum, although the SAC's amended allegations regarding the origin of the PPA present a closer call than with the FAC on this narrow issue, there is no potential antitrust injury even assuming that the PPA was not a "PURPA contract." Because Hu Honua's facility was a QF under PURPA and was negotiated with that status in mind, the resulting PPA was not a product of "competition" in a wholesale marketplace for purposes of assessing antitrust injury to Hu Honua. Again, Hu Honua might have had a viable breach of contract claim against HELCO, but this does not transform that claim into a viable antitrust claim against NextEra.

b.     *PUC Regulation*

Finally, despite its changes, the SAC continues to allege antitrust injury that is speculative. In this regard, the SAC alleges:

---

(. . . continued)
       good cause, the commission may waive or modify the time periods
       prescribed in this subsection.

In turn, § 6-75-15(e) provides:

       When a petition is filed pursuant to subsection (c), the commission
       may:
       (1) Dismiss the petition, if it finds that the qualifying facility's
       offer is incomplete in any material respect;
       (2) Resolve the differences between the parties; or
       (3) Provide such directions, instructions, or rulings as appropriate,
       and order the parties to resume negotiations.

The aforesaid conduct of HELCO has produced antitrust injury to Hu Honua, competition, and consumers, and unless enjoined by this Court, will continue to produce at least the following anticompetitive, exclusionary and injurious effects upon competition in interstate commerce:

(a) competition for the wholesale generation of power on the Island of Hawaii has been substantially and unreasonably restricted, lessened, foreclosed, and eliminated, and consumers will be forced to pay supra-competitive prices for power as a result due to the ultimate pass-through of higher wholesale costs to consumers by HELCO[.]

SAC ¶ 234. As with the FAC, this primary injury — consumers paying supra-competitive prices — remains speculative, depending on factors such as oil prices rising from approximately $60 per barrel to over $363 per barrel, SAC ¶ 66, or "over $300 per barrel by 2045," SAC ¶ 204. And it is an injury necessarily and legally controlled by the PUC.

It remains true that "[g]overnment regulation, as opposed to treble damages and criminal liability under the Sherman Act, is generally thought to be the appropriate remedy for difficulties posed by natural monopolies [such as the Hawaii utility market]." *Hu Honua Bioenergy LLC*, 2018 WL 491780, at *12 (quoting *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548 (9th Cir. 1991)). It remains true that "Hu Honua has alleged anticompetitive behavior in a

highly regulated industry." *Id.* And it remains true that "[t]his context is important." *Id.*

Here, the rate base paid by Big Island consumers, including passing on of costs related to power purchase agreements, is a matter for the PUC. *See, e.g.*, HRS §§ 269-16(a), 269-16.22. This "comprehensive regulatory framework significantly restricts the nature of the competition which is permitted." *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 (3d Cir. 1998). "Under the circumstances of this case, whether and to what extent [a utility] maintains an artificially high rate base is not within the purview of the antitrust laws." *Schuylkill Energy Res.*, 113 F.3d at 414. "[Hawaii] regulators — not the market — determine [HELCO's] rate base. [HELCO] has no unilateral ability to change its rates; any increase or decrease in rates must be filed with the PUC and conform to PUC regulations and orders." *Id.* The court thus "cannot assume the existence of a PUC [decision] for the purpose[] of assessing damages," and "[t]here is no way to determine whether the rates [consumers] will pay for electric service . . . will be affected by the alleged actions[.]" *W. Penn Power*, 147 F.3d at 269. "As the courts stated in *Kartell* [*v. Blue Shield of Mass.*, 749 F.2d 922 (1st Cir. 1984)] and *Westchester Radiological Associates* [*v. Empire Blue Cross & Blue Shield, Inc.*, 707 F. Supp. 708 (S.D.N.Y. 1989)], that supervisory power suggests that an

expansive application of the antitrust laws is not appropriate[.]" *Kamine/Besicorp Allegany L.P.*, 908 F. Supp. at 1207. The alleged injury "is simply too speculative to permit relief under the antitrust laws." *W. Penn Power*, 147 F.3d at 269.

Thus, the court's reasoning in the January 19th Order remains completely applicable:

> Like *Schuylkill Energy Resources*, "[t]he fundamental dispute between [Hu Honua] and [HELCO] concerns the interpretation of the Power Purchase Agreement . . . and should be resolved pursuant to common-law contract principles," not through the antitrust laws. 113 F.3d at 418. Like *Kamine/Besicorp Allegany L.P.*, "whether [HELCO] has breached the PPA or not, [Hu Honua] has not sufficiently demonstrated an *antitrust* injury[.]" 908 F. Supp. at 1208. And like *Crossroads Cogeneration* "[HELCO's] actions may have caused injury to plaintiff, but they did not cause injury to competition in a defined market. This is not the sort of injury the antitrust laws were meant to prevent." 969 F. Supp. at 915.

*Hu Honua Bioenergy LLC*, 2018 WL 491780, at *12.

## B.     Count Two — Conspiracy to Restrain Trade

Count Two alleges a violation of 15 U.S.C. § 1, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States[.]" To state an antitrust claim for restraint of trade, "[a plaintiff] must plead not just ultimate facts (such as a conspiracy), but evidentiary facts which, if true, will prove: (1) a contract,

combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall*, 518 F.3d at 1047 (citation omitted)

This claim fails for the same reasons that Count One fails. In particular, as analyzed above, it fails to allege a plausible antitrust conspiracy and fails to allege a plausible theory of antitrust injury. *See Seagood Trading Corp.*, 924 F.2d at 1576 ("[A] section 1 claim and a section 2 conspiracy to monopolize claim require the same threshold showing — the existence of an agreement to restrain trade."); *Rebel Oil*, 51 F.3d at 1433 ([C]ausal antitrust injury . . . is an element of all antitrust suits brought by private parties seeking damages under Section 4 of the Clayton Act.").

## C.    State Law Claims

Lastly, NextEra moves to dismiss the state law claims (Count Seven, alleging tortious interference with contract; and Count Eight, alleging unfair competition under HRS chapter 480). The January 19th Order indicated that, because the court had dismissed the federal antitrust claims, it intended to dismiss the state law claims without prejudice under 28 U.S.C. § 1367(c)(3). *See, e.g.*, *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("[I]n the usual

case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (en banc).

Such action, however, was premature given the procedural posture where federal claims (although stayed) remain against the Hawaiian Electric Defendants. The court cannot exercise its discretion under 28 U.S.C. § 1367(c)(3) until it "has dismissed all claims over which it has original jurisdiction." Although the Hawaiian Electric Defendants have entered into a settlement agreement, those claims remain in the action because the settlement was (and still is) awaiting a final decision of the PUC approving the renegotiated PPA between Hu Honua and HELCO. In turn, that PUC decision is awaiting proceedings in state court. For administrative reasons, the court denied the motion without prejudice. *Hu Honua Bioenergy*, 2018 WL 491780, at *16.

The court will take the same action again. That is, the court will not address the merits of Counts Seven and Eight, and will instead deny NextEra's Motion to Dismiss without prejudice as to those claims. The court will address the disposition of the state law claims after the settlement with the Hawaiian Electric Defendants is final.

### III. **CONCLUSION**

For the foregoing reasons, NextEra's Motion to Dismiss is

GRANTED as to Counts One and Two; the federal antitrust claims against

NextEra are DISMISSED with prejudice.  The Motion to Dismiss the state law

claims (Counts Seven and Eight) is DENIED without prejudice.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 9, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc., et al.*, Civ. No. 16-00634 JMS-KJM,
Granting in Part and Denying in Part without Prejudice Defendant NextEra Energy, Inc.'s
Motion to Dismiss Second Amended Complaint, ECF No. 148