IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HU HONUA BIOENERGY, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., et al.,<br><br>Defendants. | CIV. NO. 16-00634 JMS-KJM<br><br>ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 271, AND DENYING AS MOOT DEFENDANT HAWAIIAN ELECTRIC LIGHT CO., INC.'S MOTION TO COMPEL ARBITRATION, ECF NO. 270 |

**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, ECF NO. 271, AND DENYING AS MOOT DEFENDANT HAWAIIAN ELECTRIC LIGHT CO., INC.'S MOTION TO COMPEL ARBITRATION, ECF NO. 270**

## I. INTRODUCTION

Defendants Hawaiian Electric Light Company, Inc. ("HELCO"), Hawaiian Electric Industries, Inc. ("HEI"), and Hawaiian Electric Company ("HECO") (collectively, "Defendants") move to dismiss Plaintiff Hu Honua Bioenergy, LLC's ("Hu Honua") federal and state antitrust claims set forth in an "Amended Third Amended and Supplemental Complaint" ("ATAC") in this long-running breach of contract and antitrust action. ECF No. 271. Defendant HELCO also moves to compel arbitration. ECF No. 270. For the reasons stated below, the court GRANTS Defendants' Motion to Dismiss as to the federal antitrust claims

(Counts I and II) only and DECLINES supplemental jurisdiction over the remaining state law claims (Counts III, IV, V, and VII[1]).  The case is DISMISSED without prejudice to filing the remaining state law claims in state court.  HELCO's motion to compel arbitration is DENIED AS MOOT.

## II. BACKGROUND

The long history of this case is summarized in part in three prior orders, two issued in 2018 and one issued in 2024:  *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2018 WL 491780 (D. Haw. Jan. 19, 2018) ("*Hu Honua I*"); *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2018 WL 5891743 (D. Haw. Nov. 9, 2018) ("*Hu Honua II*"); and *Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, 2024 WL 4186687 (D. Haw. Sept. 12, 2024) ("*Hu Honua III*").  This Order assumes familiarity with these previous orders and recounts the history of the case only to the extent necessary to give context to the current motions.

In short, this dispute centers on a 2012 Power Purchase Agreement ("PPA") entered into between Hu Honua and HELCO "for the generation and sale of electricity from a renewable, dispatchable firm energy biomass power plant" on the Big Island of Hawaii.  ECF No. 268 at PageID.7541.  After Hu Honua was

---

[1] The sixth count is labeled as "Count VII" in the ATAC.  ECF No. 268 at PageID.7594.

2

unable to complete the facility on time, citing delays and missed construction milestones, HELCO terminated its PPA with Hu Honua in early 2016.[2]  *Id.* at PageID.7560–7564.  Hu Honua claims that Defendants violated antitrust laws and breached the PPA, while Defendants deny they did so.

In November 2016, Hu Honua filed this suit against Defendants, in addition to NextEra (a large Florida-based utility holding company that at the time was seeking to acquire HECO and HELCO) and Hamakua Energy Partners, L.P. ("HEP") (then-owner of the independent Hamakua power plant), asserting breach of contract and antitrust claims.  ECF No. 1.  Hu Honua filed a First Amended Complaint ("FAC") soon after.  ECF No. 27.  In its FAC, Hu Honua alleged that HELCO terminated the PPA at the behest of NextEra, in order to consolidate a monopoly over the Big Island power market and foreclose Hu Honua from that market.  ECF No. 27 at PageID.211–221, 219, 227.  In other words, the construction delays were a mere pretext for HELCO to terminate the PPA.  *Id.* at PageID.224.  Hu Honua further alleged that HELCO's planned acquisition of the independent Hamakua plant owned by HEP would "crush" competition for generation of firm power on Big Island.  ECF No. 27 at PageID.195.

---

[2] According to Hu Honua, HECO issued notices of termination on January 15 and March 1, 2016, then "purported to terminate" the agreement on August 25, 2016.  ECF No. 268 at PageID.7560–7564.  Hu Honua argues that HECO had "already repudiated" the agreement on March 1, which excused Hu Honua from performing its contract obligations.  *Id.* at PageID.7564.

3

After the FAC was filed, Hu Honua and Defendants provisionally settled their aspect of the dispute, entering into a May 2017 Amended and Restated PPA ("Amended PPA") contingent on final approval by the State of Hawaii Public Utilities Commission ("PUC"). Hu Honua and Defendants then sought approval from the PUC. Meanwhile, the other Defendants, NextEra and HEP, moved to dismiss, arguing, among other grounds, that Hu Honua lacked antitrust standing. ECF No. 95-1 at PageID.976. This court agreed, finding that Hu Honua had not adequately pled harm to competition, particularly given the pervasive regulation in the Big Island energy market. *Hu Honua I*, 2018 WL 491780, at *9–*10.

Hu Honua was given an opportunity to file a Second Amended Complaint ("SAC"), which it did in January 2018. ECF No. 138. Hu Honua and HEP later settled, and so NextEra alone moved to dismiss the SAC, again arguing that Hu Honua lacked antitrust standing. This court again agreed—although Hu Honua had modified its complaint, it had not established harm to competition. *See Hu Honua II*, 2018 WL 5891743, at *9. As a result, the court dismissed the federal antitrust claims against NextEra. *Id.* at *11.

As for the other provisionally-settled claims against Defendants, after protracted litigation the Amended PPA was rejected by the Hawaii Supreme Court in March 2023. *See Matter of Hawaiʻi Elec. Light Co., Inc.*, 152 Haw. 352, 356,

526 P.3d 329, 333 (2023).³ With the settlement agreement between Hu Honua and Defendants void, Hu Honua attempted to resurrect the action against Defendants. It filed a motion seeking leave to file a proposed Third Amended Complaint ("proposed TAC"), which if granted would add a new antitrust claim and make substantive amendments that had the effect of refocusing the antitrust allegations on Defendants' acquisition of the Hamakua plant. ECF No. 216. The Magistrate Judge granted Hu Honua leave to make certain amendments that were not opposed by Defendants,⁴ but denied leave to amend the antitrust claims, finding in part that that proposed TAC did not plausibly allege antitrust injury, and thus the proposed antitrust amendments would be futile. ECF No. 243. On appeal, this court agreed that the proposed TAC failed to plausibly allege antitrust injury. *See generally Hu Honua III*, 2024 WL 4186687, at *20 ("Based on de novo review, and determining that amendment of the federal and state antitrust claims would be futile, the court . . . DENIES further leave to amend the antitrust claims.").⁵

---

³ Given then-ongoing proceedings in the Hawaii Supreme Court, the court administratively closed the action on June 6, 2019. *See* ECF No. 186. The court reopened proceedings on November 7, 2023. *See* ECF No. 206.

⁴ These amendments included removing claims against NextEra and HEP, pleading certain facts post-dating the SAC, and dropping four state law claims. *See* ECF No. 243 at PageID.6748; *see generally* ECF No. 216-4 (redline of SAC to proposed TAC).

⁵ Despite this clear ruling, Hu Honua flouted this court's ruling and initially filed a Third Amended Complaint that made substantive changes to the antitrust claims. *See* ECF No. 261. At
(continued . . .)

After this ruling, Hu Honua filed its ATAC. ECF No. 268. Defendants filed the instant Motion to Dismiss, ECF No. 271, and HELCO filed a Motion to Compel Arbitration, ECF No. 270. Hu Honua filed Responses, ECF No. 273 (Motion to Dismiss), & 274 (Motion to Compel Arbitration). Defendants filed a Reply to the Response to the Motion to Dismiss, ECF No. 276, and HELCO filed a Reply to the Response to the Motion to Compel Arbitration, ECF No. 275. A hearing was held on March 31, 2025.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). Rule 12 is read in conjunction with Rule 8(a)(2), which "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl.*

---

a subsequent status conference, the court made clear that Hu Honua could not amend its antitrust claims in any Third Amended Complaint, resulting in the filings of the ATAC, which is now the operative complaint. *See* ECF Nos. 266 and 268.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.*). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer "more than labels and conclusions," and instead contain "enough factual matter" indicating "plausible" grounds for relief, not merely "conceivable" ones. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1055–56 (9th Cir. 2019) (citing *Twombly*, 550 U.S. at 555–56). And in a 12(b)(6) analysis, the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant. *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (citation omitted).

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must "nudge" the plaintiff's claims "across the line from conceivable to plausible." *Nielsen v. Thornell*, 101 F.4th 1164, 1169 (9th Cir. 2024) (quoting *Twombly,* 550 U.S. at 570). Determining plausibility is "a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

## IV. DISCUSSION

Before the court are Defendants' Motion to Dismiss, ECF No. 271, and HELCO's Motion to Compel Arbitration, ECF No. 270. As an initial matter, the court has found no Ninth Circuit case law requiring that it decide these motions in any particular order, and the parties agreed at the March 31, 2025 hearing that the court has discretion to decide either motion first. *See, e.g.*, *Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*, 344 F. Supp. 3d 1111, 1119–20 (N.D. Cal. 2018) (considering a motion to dismiss and motion to compel arbitration simultaneously and finding no Ninth Circuit case law mandating the court decide the motions in a particular order); *Hoptowit v. Spellman*, 753 F.2d 779, 782 (9th Cir. 1985) ("[W]hen two or three motions are presented to a court, it has discretion to decide the order in which it would consider and decide them."). As explained below, because it is dispositive as to all remaining federal claims, the court starts and ends with the Motion to Dismiss.

In its Motion to Dismiss, Defendants argue that Hu Honua's federal antitrust claims in the ATAC should be dismissed because Hu Honua has not

plausibly alleged antitrust injury.[6]  Indeed, in analyzing Hu Honua's federal antitrust claims, this court has held on three prior occasions that Hu Honua's various complaints (including a proposed complaint) failed to allege antitrust injury.  In *Hu Honua I*, 2018 WL 491780, at *9–13, the court held that there was no antitrust injury alleged in the FAC as to HEP and NextEra.  In *Hu Honua II*, 2018 WL 5891743, at *5–8, it held that there was no antitrust injury alleged in the SAC as to NextEra.  Then, after the provisional settlement fell through, Hu Honua moved to file its proposed TAC (that is, to amend the SAC), but this court determined that the proposed TAC—like the FAC and SAC—failed to plausibly allege antitrust injury.  *Hu Honua III*, 2024 WL 4186687, at *15.

At this stage of the case, the federal antitrust claims at issue in the ATAC are functionally identical to those in the SAC this court dismissed in *Hu*

---

[6] Defendants also argue that the equivalent state law antitrust claims under Hawaii Revised Statutes ("HRS") chapter 480 should also be dismissed.  *See* ECF No. 271-1 at PageID.7922.  To date, the court's orders have addressed only Hu Honua's federal antitrust claims (Counts I and II).  *See, e.g.*, *Hu Honua I*, 2018 WL 491780, at *16 (confining its analysis to federal antitrust claims and indicating intent to dismiss state-law unfair competition claims without prejudice if federal claims are dismissed).  Count V alleges that Defendants engaged in unfair methods of competition (HRS § 480-2), restraints of trade (HRS § 480-4), and monopolization (HRS § 480-9).  *See* ECF No. 268 at PageID.7593.  The issue of whether a lack of antitrust standing under federal law is fatal to Hu Honua's HRS chapter 480 claims has not been adequately briefed, and the court will not decide it.  Instead, as will be explained further below, the court dismisses Count V along with Hu Honua's other state-law claims without prejudice to refiling in state court.

*Honua II*.[7]  And Hu Honua has provided no reason for the court to depart from or otherwise reconsider its prior holding.  The additional factual allegations in the ATAC do not undermine the court's previous rulings.  In short, upon reviewing the ATAC, the court concludes—as it did in *Hu Honua II*—that "[HELCO's] actions may have caused injury to plaintiff, but they did not cause injury to competition in a defined market."  *Hu Honua II*, 2018 WL 5891743, at *10 (quoting *Hu Honua I*, 2018 WL 491780, at *12).

In reaching this conclusion, the court relies on the analysis contained in *Hu Honua I*, *II*, and *III*.  In brief, Hu Honua's allegations of antitrust injury—"injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"—are speculative, because of the highly regulated nature of the market for power on the Big Island.  *Hu Honua I*, 2018 WL 491780, at *9; *Hu Honua II*, 2018 WL 5891743, at *9–10; *Hu Honua III*, 2024 WL 4186687, at *9 (citing *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1007–08 (9th Cir. 2003)).  This is an environment where the PUC controls rates charged by public utilities (i.e., the retail market for power), governs entry into the market for public utilities (it has only authorized one, HELCO, effectively

---

[7] In ruling on the Motion to Dismiss, this court does not—as argued by Defendants—consider *Hu Honua I*, *II*, and/or *III* as "law of the case."  *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

giving it a state-sponsored monopsony), and approves power purchase agreements. *See* HRS §§ 269-7.5(a), 269-16, 269-16.22, 269-27.2(c).  The PPA was also negotiated under the auspices of federal regulation—the Public Utilities Regulation Policies Act ("PURPA")—giving Hu Honua a guaranteed ability to sell the power it produces.  *See Hu Honua I*, 2018 WL 491780, at * 9–10; *Hu Honua III*, 2024 WL 4186687, at *13–15.  Given this context, Hu Honua's assertion that its alleged harm (exclusion from the market) "flows from" Defendants' alleged anticompetitive action (termination of the PPA), and that this caused harm to the market for power on the Big Island, does not rise beyond mere speculation.

    Hu Honua argues that the allegations of the ATAC and the SAC are meaningfully different because it has added "extensive supporting facts about actual harms to competition."  ECF No. 273 at PageID.7972.  According to Hu Honua, these new facts show that Hu Honua continued to be excluded from the Big Island energy market in the years after the SAC.  *Id.*  But, as this court has explained, any link between Hu Honua's present exclusion from the market and the purported anticompetitive effects of Defendants' conduct is "complicated by the PUC and the Hawaii Supreme Court's intervention."  *Hu Honua III*, 2024 WL 4186687, at *18.  Ultimately, the connection between Hu Honua's alleged antitrust injury and the purported anticompetitive effects of Defendants' conduct remains "too attenuated to

11

satisfy the antitrust injury requirement." *Id.* Nothing in Hu Honua's ATAC leads the court to a different conclusion.

The court's reasoning in its prior Orders addresses the remainder of Hu Honua's arguments directed to antitrust injury. For example, Hu Honua argues that "[t]o hold that Hu Honua cannot plead antitrust injury here would make [Qualifying Facility under PURPA] status a categorical bar . . . ." ECF No. 273 at PageID.7981. But as the court explained in *Hu Honua III*, there is no such categorical holding: Rather, "'the structure of a regulated industry *may* create a lack of antitrust standing'—and in this case, it did." *Hu Honua III*, 2024 WL 4186687, at *18 (quoting *Hu Honua I*, 2024 WL 491780, at *12 (citing *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 269 (3rd Cir. 1998))). Next, Hu Honua argues that the court's previous rulings actually support Hu Honua's allegations, citing this court's holdings that neither PUC regulation nor PURPA categorically preclude antitrust injury. ECF No. 273 at PageID.7977. As discussed at length in previous Orders, even if neither PUC regulation nor PURPA *alone* is a categorical bar, on these facts and within this regulatory landscape, Hu Honua has not plausibly alleged that the termination of the PPA was anticompetitive behavior that caused harm to both Hu Honua and the market. Rather, as this court previously stated, this is a

contract claim dressed in antitrust garb. *Hu Honua III*, 2024 WL 4186687, at *16 (citing *Hu Honua I*, 2018 WL 491780, at *12).

Having dismissed the federal antitrust claims, the only remaining claims are state law claims.[8] As to these remaining claims, because there is no diversity jurisdiction, the court has only supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3). And under § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction [over state law claims] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) ("[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (citation and internal quotation marks omitted). Although this case was filed more than eight

---

[8] These include breach of contract (Count III); breach of the covenant of good faith and fair dealing (Count IV); unfair competition in violation of HRS chapter 480 (Count V), and conversion (Count VII). ECF No. 268 at PageID.7588–7596.

years ago, the case had been administratively closed for much of that period while the PUC and Hawaii Supreme Court examined the PPA.  The federal law issues have now been resolved, and the remaining state-law claims have not been addressed by this court.  Exercising its discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims—breach of contract (Count III); breach of the covenant of good faith and fair dealing (Count IV); unfair competition under HRS chapter 480 (Count V); and conversion (Count VII)—and DISMISSES these claims without prejudice.  *See id.*

## V. **CONCLUSION**

For the reasons set forth above, the court GRANTS IN PART Defendants' Motion to Dismiss, ECF No. 271, as to the federal antitrust claims (Counts I and II) only.  The court declines to exercise jurisdiction over the remaining state-law claims (Counts III, IV, V and VII) and they are DISMISSED WITHOUT PREJUDICE.  Defendant HELCO's Motion to Compel Arbitration is accordingly DENIED AS MOOT.  The Clerk shall close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 17, 2025.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge